1999-NMSC-022

980 P.2d 646

**In the Matter of Rudy MARTIN, Esq., an Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

No. 18,539.

Supreme Court of New Mexico.

May 10, 1999.

Sally Scott–Mullins, Albuquerque, for Disciplinary Board.

Antonio V. Silva, El Paso, Texas, for Respondent.

**OPINION**

PER CURIAM.

{1} This matter came before the Court upon recommendation of the disciplinary board to adopt the conditional agreement not to contest and consent to discipline, as modified, and to impose the sanctions set forth therein. For the reasons that follow, the consent agreement hereby is adopted and Rudy Martin is indefinitely suspended from the practice of law due to incapacity for a minimum period of one year.

{2} On July 25, 1997, the office of disciplinary counsel received a complaint against respondent from an office manager for a chiropractic clinic, who alleged that respondent had provided the clinic with letters of protection for the treatment of two clients injured in an automobile accident on July 22, 1994. The office manager stated that each time she called respondent's office, she was told that respondent was still working on the cases. On April 7, 1997, the office manager wrote to respondent that she had been informed by his clients that their cases had settled more than eighteen (18) months previously and demanded payment from respondent within ten (10) days. When payment was not made, a complaint was filed with the office of disciplinary counsel.

{3} In his initial response to the complaint, respondent stated that a former employee had failed to disburse funds to pay the clinic, and that, although it was his practice to have copies of the insurance draft, release, disbursement checks and other necessary documents retained in the file and given to the clients, that was not done in this case. Respondent also told disciplinary counsel that, upon discovering payment had not been made, he promptly remitted the past due amounts.

{4} On September 3, 1997, disciplinary counsel asked respondent for copies of the checks issued when it was determined pay-

ment had not been made, copies of respondent's trust account bank statements for the period from April 1995 through August 1997, copies of the deposit slips for both clients' settlement checks, copies of the disbursement checks, copies of the trust account ledgers, and copies of the quarterly reconciliations of trust account checkbook balances, bank statement balances, and client trust ledger sheet balances from April 1995 through August 1997. All of the requested documents should have been regularly maintained by respondent pursuant to the requirements of Rules 16–115 and 17–204 NMRA.

{ 5} Respondent requested and received an extension of time, but failed to provide the requested information. In response to a reminder letter, respondent informed disciplinary counsel that the requested documents would be hand-delivered on November 12, 1997, and also stated that missing bank documents for three months in 1997 had been ordered from the bank and would take an additional week for him to obtain. Because more than bank documents for three months in 1997 were missing from the correspondence and documents delivered on November 12, 1997, disciplinary counsel wrote to respondent on December 8, 1997, and asked him to provide all previously requested trust documents not produced on November 12, 1997, to wit, trust account bank statements for April through December 1995 and February through August 1997, deposit slips for the settlement checks, and copies of certain disbursement checks.

{ 6} The documents provided by respondent included reports entitled "Trust Account Analysis." Disciplinary counsel's December 8, 1997, letter told respondent that it was unclear if those reports were intended to be client ledgers or the reconciliations required by Rule 17–204(A)(7). Respondent was informed that even if the reports were intended to be reconciliations, they were incomplete. Properly performed reconciliations of the trust account bank statements, client trust ledgers, and checkbook balance would have alerted respondent of trust account discrepancies, which could have been detected and cured.

{ 7} Disciplinary counsel's December 8, 1997, letter also informed respondent that a review of the trust account bank statements for the period of January 1996 through January 1997, revealed two very serious problems. Respondent's initial response stated that payment to the clinic was overlooked at the time of settlement, thus the amount owed to the clinic should have remained continuously on deposit in the trust account. Nonetheless, in six of thirteen months for which respondent produced bank statements, the ending monthly balance in his trust account was less than the total amount of the clinic's bill. Additionally, the "Trust Account Analysis" reports for May and June 1995 showed disbursements made for one client before any funds were deposited for that client. In September 1995, additional disbursements were shown for the client, without a deposit, resulting in a negative balance in the trust account. The December 8, 1997, letter also informed respondent that evidence of misuse of trust funds compelled an audit of his trust account, the cost of which would be respondent's responsibility and which would commence upon receipt of the remaining requested documents. Respondent was asked to respond on or before December 19, 1997.

{ 8} When no response was received, a second letter was sent on January 22, 1998, with another copy of the December 8, 1997, letter. Respondent was advised that in order to avoid disciplinary charges being filed against him, a response was due by February 2, 1998. As of the date charges were filed, neither a response nor a request for an extension of time to reply had been received from respondent. None of the letters sent to respondent was returned to the office of disciplinary counsel by the postal service.

{ 9} After charges were filed, disciplinary counsel continued efforts to obtain the bank and trust records needed to complete an audit of the trust account. Respondent provided some additional information, but stated he could not afford to pay the bank charges for copying his trust account records. Disciplinary counsel subpoenaed

the bank records.[1] No evidence of conversion of funds was found; respondent admitted recordskeeping violations, commingling, and unintentional misuse of client funds.

{ 10} Respondent's physical and emotional health became an issue as it had during a prior disciplinary proceeding. In his answer to the formal charges, respondent alleged, *inter alia*, that he suffered from chronic fatigue syndrome. Respondent's discovery responses indicated he suffered from depression. Similar health issues had been raised by respondent during a 1995 disciplinary proceeding. At one point in this proceeding, a question was raised about respondent's ability to assist his counsel in the presentation of a defense to the charges. Also during this time, respondent closed his practice; disciplinary counsel and the committee were notified that he had obtained employment in a non-attorney position.

{ 11} In November 1998, respondent and disciplinary counsel tendered a consent agreement to the hearing committee for consideration pursuant to Rule 17–211 NMRA. The consent agreement contained respondent's agreement not to contest charges that he had violated Rules 16–101 (competence), 16–103 (diligence), 16–115(A) (trust account requirements), 16–803(D) (cooperation with disciplinary counsel), and 16–804(H) (engaging in conduct reflecting adversely on fitness to practice law). The consent agreement recited respondent's assertion that his physical and psychological infirmities had contributed to the misconduct being addressed. It also specifically recited that respondent was able to participate in his defense, and that he understood that health problems are not a defense to charges of professional misconduct.

{ 12} The consent agreement provided for respondent to be suspended pursuant to Rule 17–208(B) NMRA, which provides for suspension of attorneys due to incapacity. It also provided that respondent would be required to apply for reinstatement and to demonstrate his mental and physical fitness to resume the practice of law. After addressing respondent's asserted health problems, the consent agreement also addressed the trust account issues set forth in the charges. It provided that, upon reinstatement from disability suspension, respondent would receive a one-year disciplinary suspension, deferred in favor of supervised probation. During the period of probation, respondent's trust account would be audited at his expense.

{ 13} The hearing committee advised the parties of its willingness to recommend acceptance of the consent agreement if certain modifications were made in the terms of the agreement. The committee required respondent to unconditionally admit his misconduct because of a concern that respondent was not accepting responsibility for his actions. The committee also required that the period of disability suspension be for a minimum of one year. These changes were accepted by respondent and disciplinary counsel and approval of the consent agreement was recommended by the hearing committee to a panel of the disciplinary board, who, in turn, presented its recommendation to this Court. In deciding whether to accept the consent agreement and impose the discipline it provides, we consider several factors.

{ 14} This is the third time respondent has been the subject of formal disciplinary charges. Both prior proceedings involved respondent's failure to cooperate with disciplinary counsel, a charge which respondent admitted in the consent agreement in this case. In the most recent proceeding, respondent was also found to have failed to keep a client informed of the status of a legal matter and to properly protect the client's interests at the termination of the representation. Both prior cases resulted in respondent being put on probation, which he successfully completed. Nonetheless, this Court has previously noted that repeated instances of mis-

---

1. It is appropriate for disciplinary counsel to subpoena financial institution records concerning a lawyer's trust account if an issue involving the ethical use of the trust account has been raised and the lawyer does not produce all records needed for an audit. Obtaining documenta-

tion from a financial institution can be an expensive proposition, as it was in this case. The cost of obtaining records by subpoena will be assessed against an attorney found to have violated the requirements of the Rules of Professional Conduct concerning trust accounts.

conduct will generally result in the imposition of more severe sanctions. *See In re Rivera,* 112 N.M. 217, 218, 813 P.2d 1015, 1016 (1991).

{ 15} The Court also considers the imposition of a disability suspension as part of the resolution of charges of professional misconduct. As the consent agreement correctly acknowledges, neither mental nor physical infirmity provides a defense to charges of professional misconduct. The reason for this seemingly harsh dictate is that the purpose of professional discipline is to protect the public, not to punish attorneys. *See Preface, Rules Governing Discipline.* A client can be harmed just as seriously by an attorney who fails to discharge ethical responsibilities because of illness, as by one who does so for another reason. Rule 16–116(A) compels lawyers not to undertake representation, or, if undertaken, to withdraw from the representation, if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client...."

{ 16} Similarly, health issues generally are not considered in mitigation in disciplinary proceedings. Mental or emotional problems can be a mitigating factor only if the attorney can show a "meaningful and sustained period of rehabilitation." *In re Smith,* 115 N.M. 769, 771, 858 P.2d 857, 859 (1993); *ABA Standards for Imposing Lawyer Sanctions,* § 9.3 (1991). The *ABA Standards* provide that physical disability can be a mitigating factor and must be determined on a case-by-case basis. For example, if an attorney suffers a sudden disability, especially if the attorney is a sole practitioner, clients may be harmed in the short term through no fault of the attorney, and, in that instance, the physical infirmity may be considered in mitigation. If, as with chronic fatigue syndrome from which respondent suffers, the physical condition is chronic and materially impairs the lawyer's ability to represent a client, the attorney is obligated by Rule 16–116(A) to decline to represent a potentially new client, or where representation has commenced, withdraw from representation. If the lawyer fails to act appropriately, not only will the physical condition not be a defense to the charges or a mitigating factor, it may be part of the proof that ethical violations occurred.

{ 17} Finally, we also consider that the rule violations admitted by respondent involve his failure to properly maintain and operate his trust account, and his failure to retain the required records for the account. We have repeatedly stated that "such transgressions [are] of the most serious nature." *In re Ruybalid,* 118 N.M. 587, 589, 884 P.2d 478, 480 (1994).

{ 18} In this case we find that a period of disability suspension is warranted. Because this case comes to us for consideration of a consent agreement, our determination is based primarily upon respondent's agreement that his physical and psychological condition contributed to his misconduct. The approach of the consent agreement recognizes respondent's current impairment and obligates him to apply for reinstatement only when he can demonstrate his physical and mental fitness to resume the practice of law, and, if that occurs, the agreement provides for imposition of discipline for his violations of the Rules of Professional Conduct. The discipline, suspension for a period of one year deferred in favor of supervised probation, with conditions, is appropriate, albeit lenient. Should respondent be reinstated to resume the practice of law, he should know that it will be necessary for him to comply fully with the requirements of the discipline imposed and with the Rules of Professional Conduct. While under disability suspension, respondent must refrain from any conduct involving the practice of law, including providing legal advice. Failure to do so could result in additional disciplinary charges and could impact the terms and conditions upon which respondent would be reinstated from disability suspension.

{ 19} NOW, THEREFORE, IT IS ORDERED that the recommendation hereby is adopted and, pursuant to Rule 17–208(B) NMRA, Rudy Martin hereby is indefinitely suspended from the practice of law due to incapacity for a minimum period of one year beginning February 26, 1999;

{ 20} IT IS FURTHER ORDERED that prior to the filing of any motion for reinstatement pursuant to Rules 17–208(D) and 17–214 NMRA respondent shall demonstrate his physical and mental fitness to resume the practice of law and may be required to submit to examination by such qualified medical experts as this Court may designate;

{ 21} IT IS FURTHER ORDERED that during the period of indefinite suspension, respondent is prohibited from engaging in the practice of law, including providing legal advice;

{ 22} IT IS FURTHER ORDERED that should respondent be reinstated to the practice of law, he shall receive as discipline the following sanctions:

(1) Respondent shall be suspended from the practice of law for a definite period of one year pursuant to Rule 17–206(A)(3) NMRA, commencing on the date of the order granting reinstatement;

(2) The twelve-month period of suspension shall be deferred and respondent shall be on probation throughout the deferral period and supervised by a licensed New Mexico attorney selected or approved by disciplinary counsel;

(3) Respondent shall meet with the supervising attorney as often as the supervisor deems necessary or advisable, but no less than once per month;

(4) Respondent shall accept instruction from and comply with all directives of the supervisor concerning trust account record keeping and law office management;

(5) Respondent shall demonstrate to the satisfaction of the supervisor that his trust account is in compliance with the requirements of Rules 16–115 and 17–204 NMRA;

(6) The supervising attorney shall provide quarterly reports to disciplinary counsel concerning respondent's compliance with supervision;

(7) Thirty (30) days prior to the conclusion of the probationary period, the supervisor shall advise disciplinary counsel whether respondent has satisfactorily complied with the supervisor's instructions and directives;

(8) Respondent shall submit to and bear the expense of an audit of his trust account during the probationary period, conducted at a time and by auditors selected or approved by disciplinary counsel;

(9) Should the audit reveal violations of Rule 16–115 and 17–204 NMRA, disciplinary counsel may seek to have the deferral of his suspension, or some portion thereof, revoked, and may file additional charges of misconduct based upon the findings of the audit;

(10) Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline during the period of supervised probation;

(11) Respondent shall compensate the supervising attorney at an hourly rate to be determined between respondent and his supervisor;

(12) Respondent shall keep this Court, the State Bar of New Mexico, and the disciplinary board apprised of his current address and shall notify said agencies of any changes in his address and telephone number of record;

(13) Respondent shall pay the costs incurred in this disciplinary action in the amount of $5,975.79, on or before April 26, 1999, and any balance remaining thereafter shall accrue interest at a rate of fifteen percent (15%); and

(14) Should respondent fail to satisfy all conditions and/or should any portion of the deferred suspension period be revoked, disciplinary counsel may object to reinstatement pursuant to Rule 17–214(B); and

{ 23} IT IS FURTHER ORDERED that said costs shall be reduced to a transcript of judgment.

{ 24} IT IS SO ORDERED.