IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-027

Filing Date: June 24, 2013

Docket No. 33,829

IN THE MATTER OF
PATRICIA S. ORTIZ, Esquire

An Attorney Licensed to
Practice Before the Courts
of the State of New Mexico

Christine E. Long, Assistant Disciplinary Counsel
Albuquerque, NM

for Disciplinary Board

The Bryant Law Office, LLC
Daniel A. Bryant
Ruidoso, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

{1}     The oath taken by every attorney upon admission to the practice of law in New Mexico includes a promise to "maintain civility at all times, abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness unless required by the justice of the cause with which [the attorney is] charged." Rule 15-304 NMRA.  By that same oath, every attorney practicing in New Mexico promises to "maintain the respect due to courts of justice and judicial officers." *Id*.  Those solemn promises are reflected within our Rules of Professional Conduct, which prohibit a lawyer from engaging in conduct during the course of representing a client that has "no substantial purpose other than to embarrass, delay or burden a third person," Rule 16-404(A) NMRA, and from making statements concerning the qualifications or integrity of a judicial officer that the lawyer knows are false or that the lawyer makes with reckless disregard for the truth, Rule 16-802(A) NMRA.

{2}     This disciplinary proceeding arises from a series of incidents in which an attorney

1

failed in her commitment to civility and respect toward others, eroding public confidence in the legal system and weakening the effectiveness of the litigation on many levels. Treating others with respect and abstaining from offensive conduct are not standards unique to the legal profession, but maintaining such standards of behavior is critical to the proper functioning of our adversarial system of justice. Without a steadfast commitment to treating others with respect and dignity, the reputation of our legal system will continue to diminish, and the public's willingness to rely on our legal system to resolve disputes will continue to erode. This opinion underscores this Court's commitment to enforce ethical standards of behavior that will promote a civil and respectful environment within our legal system.

**FACTUAL AND PROCEDURAL BACKGROUND**

**{3}** This case began with the filing of a specification of charges against attorney Patricia S. Ortiz (Respondent) for three counts of violating our Rules of Professional Conduct through her oral and written statements. The charges arose from three separate incidents that occurred during Respondent's representation of three different clients in three different domestic matters in district court. As a result of her conduct, complaints were filed with our disciplinary board by opposing counsel or an opposing party in each case. The disciplinary board's hearing committee issued findings of fact and conclusions of law on each of the three incidents.

**{4}** Findings on the first incident involved a series of oral and written statements made by Respondent during the course of a domestic violence proceeding. In one conversation between Respondent and opposing counsel, Respondent referred to a fellow member of the bar as a "dumb bitch." During another hearing, Respondent also made uncomplimentary and demeaning comments in the presence of opposing counsel and his client to the effect that the domestic violence commissioner was "a freak" or that the proceedings in his courtroom were "a freak show." In a subsequent letter to opposing counsel, Respondent made other uncomplimentary and demeaning comments about the opposing party and his family, and also stated that opposing counsel was "despicable to be so new to the profession." In yet another letter, Respondent referred to opposing counsel as "eternal lying scum," and in an email one year later accused the opposing party of "lying through his frigging teeth." The hearing committee found that Respondent "demonstrated a pattern of intemperate, disparaging, demeaning, insulting, threatening, uncomplimentary, and unprofessional use of language" throughout the entire course of the proceeding that "aggravated and inflamed the tone of the litigation" and "adversely impacted the progress of the litigation and caused [the opposing party] to incur unnecessary additional expense."

**{5}** Findings on the second incident arose out of a domestic relations matter involving "very contentious issues" concerning custody, visitation, and a parenting plan. At issue was a prior custody and visitation arrangement ordered by the judge previously assigned to the case, who had since retired. Respondent and her client were in the courtroom with opposing counsel, her client, and his family. The current judge assigned to the case was not in the courtroom while the parties discussed a possible resolution to the case.

2

**{6}**     During the course of their discussion, opposing counsel, her client, and his family heard Respondent either use the word "drunk" with respect to the retired judge or heard Respondent refer to the retired judge as a "drunkard on the bench," a "drunken idiot on the bench," or "drunk on the bench," while being critical of the order he had entered.  They also heard Respondent say that the opposing party's mother had "bought off" the retired judge, which was an accusation that Respondent had previously made to opposing counsel. Although Respondent contended that her remark was made to her client during a confidential conversation in the courtroom, the hearing committee nevertheless found that Respondent's statement was recklessly made in a public venue and was not made in a confidential conversation with Respondent's client, but was instead made toward opposing counsel and her client.  In addition to finding that Respondent's comments about the retired judge increased the acrimony in the case and fueled an adversarial climate, the hearing committee found that Respondent made numerous recurring, uncomplimentary, and demeaning comments to and about the opposing party, referring to him as "goofy" as well as a "dimwit," a "dingbat," and a "duffus."

**{7}**     Findings on the third incident at issue in this disciplinary proceeding, Respondent implied in an email that the judge and opposing counsel in yet another domestic matter were engaged in an impermissible relationship that improperly influenced the judge by stating that "the two of them are bosom buddies."  In the same email, Respondent also stated that "we already know that [the judge] did not tell the truth to the teacher—God only knows what she and CASA [Court Appointed Special Advocates for Children] said to each other." Regarding the statements in the email, the hearing committee found that there was no evidence to support Respondent's accusations.  During the course of that case, Respondent accused opposing counsel of making improper comments in hearings before the district court that were "designed only to attempt to influence the presiding judge into adopting the same foul, inhumane attitudes that [opposing counsel] holds for fallible human beings."  As with Respondent's other accusations, the hearing committee found that there was no evidence to support Respondent's accusations of inappropriate conduct by opposing counsel and that her statements had "no identifiable redeeming justification other than to insult or intimidate opposing counsel or inappropriately [try] to influence the trier of fact."

**{8}**     In light of the foregoing conduct, the hearing committee concluded that Respondent violated several Rules of Professional Conduct.  *See* Rule 16-401(A) NMRA (prohibiting a lawyer from knowingly making a false statement of material fact to a third person); Rule 16-404(A) (prohibiting a lawyer during the course of representing a client from engaging in conduct that has "no substantial purpose other than to embarrass, delay or burden a third person"); Rule 16-802(A) (prohibiting a lawyer from making statements concerning the qualifications or integrity of a judicial officer that the lawyer knows are false or that are made with reckless disregard for the truth); Rule 16-804(A) (violating or attempting to violate the Rules of Professional Conduct constitutes professional misconduct by a lawyer); Rule 16-804(C) (engaging in conduct that involves misrepresentation); Rule 16-804(D) (engaging in conduct that is prejudicial to the administration of justice constitutes professional misconduct by a lawyer).

**{9}** In determining its recommendation for discipline, the hearing committee found that several aggravating circumstances existed, including the fact that Respondent has substantial experience in the practice of law; she has committed multiple offenses that display a pattern of misconduct; she has refused to acknowledge the wrongful nature of her conduct; and she has had prior disciplinary offenses. The hearing committee therefore recommended that Respondent (1) be suspended from the practice of law for a minimum of six months, (2) serve a twelve-month period of supervised probation after the suspension, (3) successfully complete extra continuing legal education in the areas of professionalism and ethics, (4) successfully complete an accredited anger management program, and (5) pay the costs of the proceeding.

**{10}** The hearing committee's recommendation then went before a panel of the disciplinary board for review. *See* Rule 17-314(A) NMRA (providing for review of hearing committee recommendations by a hearing panel of the disciplinary board). While the matter was pending before the disciplinary board panel, Respondent moved for reconsideration and asked that the matter be reopened for the taking of new evidence because Respondent claimed that her newly diagnosed bipolar disorder contributed to her misconduct. The disciplinary board panel denied Respondent's request and ultimately adopted the hearing committee's recommendation for discipline.

**{11}** When the disciplinary board recommends the suspension of an attorney, Rule 17-316(A)(1) NMRA permits that attorney to request a hearing before this Court. Respondent, however, chose not to request a hearing and stated that she was prepared to accept the recommended suspension. At the request of this Court, Respondent nonetheless filed a response. In her response, and subsequently at oral argument before this Court, Respondent did not challenge the evidence of her misconduct, but focused instead on her contention that the recommended six-month suspension was too harsh because she had shown remorse for her misconduct and because her misconduct may have been caused, at least in part, by a previously undiagnosed bipolar disorder.

**{12}** After deliberations following oral argument, we announced Respondent's discipline from the bench and then issued a written order to memorialize our ruling, which included a six-month suspension from the practice of law, a concurrent two-year period of supervised probation, additional continuing legal education in ethics and professionalism, successful completion of an anger management program, and payment of the costs of the disciplinary proceeding. Regarding the period of suspension, however, we delayed implementing the suspension for 90 days to give Respondent the opportunity to provide evidence that her newly diagnosed bipolar condition contributed to her misconduct and that treatment of the condition would prevent the recurrence of such misconduct. We issue this opinion to explain our decision.

**DISCUSSION**

**{13}** We begin by noting that there is no dispute that Respondent engaged in a persistent

pattern of misconduct unbecoming to an attorney who has taken an oath to "maintain civility at all times, abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party." Rule 15-304. Thus, our focus is the appropriate level of discipline.

**{14}**    Respondent's words were not innocuous. The hearing committee found, and Respondent has not contested, that her misconduct increased acrimony and fueled an adversarial climate that aggravated, inflamed, and adversely impacted the progress of the litigation in which she was involved. By her intolerable behavior, Respondent caused unnecessary additional expense and sought to intimidate and improperly influence those who stood in her way. Our legal profession must vigilantly strive to maintain the confidence of the public and to earn a reputation as a profession that pursues justice without personal attacks and unnecessary expense. Respondent's misconduct has undermined such efforts and reinforced public disillusionment with a legal system that has become too costly, hostile, and slow. Our rules of ethics require much more from our attorneys, and our system of justice can afford no less. In short, we agree with the conclusions of both the hearing committee and the disciplinary board hearing panel that Respondent's actions violated the myriad of ethical rules discussed above. *See* Rules 16-401(A), -404(A), -802(A), -804(A), -804(C), & -804(D).

**{15}**    We also agree with the hearing committee's conclusion that a number of aggravating factors are present in this case. First, Respondent committed multiple violations of our ethics rules, and the rules she has violated demonstrate a disturbing pattern of conduct. *See ABA Standards for Imposing Lawyer Sanctions* (*ABA Standards*) 9.21, 9.22(c), & 9.22(d) (1986, as amended through 1992) (providing that a pattern of misconduct and multiple offenses are aggravating factors that may justify an increase in the degree of discipline); *In re Key*, 2005-NMSC-014, ¶ 5, 137 N.M. 517, 113 P.3d 340 (per curiam) (recognizing that this Court looks to the ABA Standards for guidance in determining appropriate lawyer disciplinary sanctions). Second, while the egregious behavior in this case is something we do not want to see from any attorney, it is especially disappointing to see it from a long-time member of the bar who should be serving as a model of professionalism for new attorneys to emulate. *See ABA Standards* 9.22(i) (providing that substantial experience in the practice of law may be an aggravating factor). Perhaps most troubling, Respondent has a history of past disciplinary sanctions imposed by the disciplinary board that never came before this Court for review, but that are quite similar to the misconduct in this case. *See id.* 9.22(a) (providing that past disciplinary offenses may be an aggravating factor); *see also In re Ortiz*, Disciplinary No. 01-2008-534, *Bar Bulletin*, N.M. State Bar, August 18, 2008, at 15 (formal reprimand dated July 25, 2008) (reprimanding respondent for disparaging comments and unfounded accusations directed at a judge).

**{16}**    Because Respondent's conduct was intentional and caused prejudice to both the parties and their attorneys who were the recipients of her intemperate remarks, and because a number of aggravating factors were present in this case, after oral argument this Court was inclined to agree with the disciplinary board's recommendation to suspend Respondent from

5

the practice of law for six months. *See generally ABA Standards* 3.0 (providing that a court should consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and any aggravating or mitigating factors to determine the appropriate level of discipline). Indeed, other jurisdictions have imposed similar lengths of disciplinary suspension for attorneys who used intemperate and offensive language within the legal system. *See, e.g.*, *Ky. Bar Ass'n v. Waller*, 929 S.W.2d 181, 183 (Ky. 1996) (imposing six-month suspension for use of "scurrilous language with respect to a judge"); *In re Kahn*, 791 N.Y.S.2d 36, 38 (N.Y. App. Div. 2005) (per curiam) (imposing six-month suspension for making unseemly and offensive comments); *Office of Disciplinary Counsel v. Gardner*, 793 N.E.2d 425, 433 (Ohio 2003) (per curiam) (imposing six-month suspension for unfounded attacks on the integrity of the judiciary); *In re White*, 707 S.E.2d 411, 413, 416 (S.C. 2011) (per curiam) (imposing 90-day suspension for "blatant incivility"). However, because Respondent continued to assert that her newly diagnosed bipolar disorder was the cause of her misconduct, this Court was hesitant to impose an immediate suspension at the close of oral argument. *In re Bristol*, 2006-NMSC-041, ¶ 32, 140 N.M. 317, 142 P.3d 905 (per curiam) (recognizing that suspension is not warranted if the respondent attorney does not possess the requisite culpable mental state).

**{17}** While Respondent's misconduct, standing alone, would warrant a suspension from the practice of law, we deferred the implementation of the six-month suspension to give Respondent an opportunity to demonstrate whether her misconduct was the result of a bipolar condition that could be successfully treated to the point that this Court could be assured that Respondent would not engage in similar misconduct in the future. Ordinarily such matters should be developed below through evidence before a hearing committee. *Id.* ¶ 15 (noting that the hearing committee is the entity designated to take evidence in a disciplinary hearing). However, under the circumstances of this case, Respondent was not diagnosed with her condition, and that diagnosis was not linked to her ongoing outbursts, until after the hearing committee had concluded its work. Respondent asked the hearing panel to permit the matter to be reopened so that she could develop evidence on these points, but the hearing panel denied her request. We do not fault the hearing panel for its reluctance to reopen the proceeding for new evidence at the eleventh hour, but at the same time, this Court was unwilling to simply discipline Respondent without taking into consideration all pertinent information that might help this Court fashion an effective sanction. We therefore elected to defer Respondent's suspension to see if she could present competent medical evidence to show that her misconduct was caused by her bipolar disorder and could be prevented in the future with proper treatment.

**{18}** In so doing, we were mindful that a mental infirmity does not provide a defense to professional misconduct. *In re Martin*, 1999-NMSC-022, ¶ 15, 127 N.M. 321, 980 P.2d 646 (per curiam). As we have said before, "a medical condition, though met with sympathy and compassion, is not to be considered as a mitigating factor in discipline absent a meaningful and sustained period of successful rehabilitation." *In re O'Brien*, 2001-NMSC-025, ¶ 17, 130 N.M. 643, 29 P.3d 1044 (per curiam). Respondent could not demonstrate "a meaningful and sustained period of successful rehabilitation," *id.*, at the time of her hearing before this

Court because an evidentiary record had not been developed below, given that her condition had been only recently diagnosed, and a course of treatment had just begun. Under these circumstances, we concluded that the prudent course was to delay the imposition of the suspension until we had all the information necessary to make a fully informed decision about the appropriate level of discipline to impose. In this regard, it is important to emphasize that Respondent's bipolar disorder was not a defense to the imposition of disciplinary sanctions. *In re Martin*, 1999-NMSC-022, ¶ 15. Quite the opposite is true. Regardless of the cause, this Court is obligated to impose the appropriate level of discipline necessary to protect the public and our legal system from further damage that might result from continued misconduct by Respondent. *See In re Chavez*, 2013-NMSC-008, ¶ 26, 299 P.3d 403 (recognizing that the Court's primary concern in attorney discipline cases is to protect the public by ensuring that attorneys comply with our standards of professional conduct). Whether Respondent was fully culpable for her misconduct is less important than ensuring that similar misconduct does not occur in the future. We cannot fashion truly effective sanctions without having all the pertinent information before us.

**{19}** As it turned out, Respondent was able to provide this Court with uncontested medical evidence demonstrating that her prior outbursts were quite likely caused by a long-standing but untreated bipolar condition, and the treatment she was receiving would prevent such misconduct from recurring. We therefore ultimately rescinded Respondent's suspension, but retained the period of supervised probation. The outcome does not diminish the seriousness of Respondent's misconduct in this case. Regardless of the cause, her offensive language and unfounded accusations caused real harm. We are confident that with continued treatment and a heightened awareness of the importance of civility in all her communications, Respondent will not come before this Court again to answer new disciplinary charges. However, should she relapse, we will not hesitate to impose a more severe disciplinary sanction next time.

**CONCLUSION**

**{20}** While the ultimate outcome in this case did not result in Respondent's suspension from the practice of law, all members of the bar should take note that our call for civility in all aspects of the practice of law must be taken seriously. Because legal disputes can be emotionally charged, it is up to every member of the bench and bar to behave in a manner that exemplifies the best of our profession. At a minimum, it is the ethical responsibility of every attorney to maintain a civil demeanor that helps to resolve disputes, rather than escalate them.

**{21}   IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

7

_____

**PETRA JIMENEZ MAES, Chief Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**

**Topic Index for *In re Ortiz*, 33,829**

**ATTORNEYS**
Disciplinary Action
Professional Responsibility

**MENTAL COMPETENCY**
Mental Illness and Competency Statutes