This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: January 29, 2024**

**NO. S-1-SC-39515**

**IN THE MATTER OF**
**NANCY ANA GARNER, ESQ.,**

**An Attorney Licensed to Practice Before**
**the Courts of the State of New Mexico**

Anne L. Taylor, Chief Disciplinary Counsel
Christine E. Long, Deputy Disciplinary Counsel
Albuquerque, NM

for the New Mexico Disciplinary Board

Angelo J. Artuso
Albuquerque, NM

for Respondent

## PUBLIC CENSURE

**PER CURIAM.**

**{1}** This disciplinary proceeding commenced with the Disciplinary Board's filing of a Specification of Charges against Respondent NANCY ANA GARNER under Rule 17-105(B)(3)(d) NMRA alleging she engaged in certain misconduct constituting violations of the Rules of Professional Conduct, *see* Rules 16-100 to 119 NMRA. A hearing committee was subsequently assigned to review this matter, and the parties thereafter entered into a *Conditional Agreement of No Contest to Certain Allegations and Consent to Discipline* (Agreement). A hearing committee for the Disciplinary Board approved the Agreement, and this matter thereafter came on for consideration by this Court upon the Disciplinary Board's recommendation to adopt the Agreement.

**{2}** In the Agreement, Respondent did not contest that the Disciplinary Board had sufficient evidence to demonstrate that she violated the Rules of Professional Conduct, as described herein in greater detail. We accordingly issued an order in this matter accepting the Disciplinary Board's recommendation and approving the Agreement. In

that order we suspended Respondent from the practice of law for a period of one year, to be deferred in lieu of unsupervised probation with conditions, and we assessed costs to Respondent and indicated that this Court's public censure would follow separately. This is that public censure, which we now issue to admonish Respondent for her uncontested misconduct and to caution her and others against engaging in other, similar, future misconduct.

## I.    BACKGROUND

**{3}**    Respondent has been an attorney licensed to practice law in New Mexico since 1981. This disciplinary action arose from Respondent's conduct during her representation of two different clients in separate matters each related to the COVID-19 public health emergency: a group of employees of Sandia National Laboratories (SNL) regarding SNL's COVID-19 policies and Backstreet Grill, LLC, (Backstreet) regarding the revocation of its food permit for noncompliance with a COVID-19 public health order. Respondent has no prior disciplinary history.

**{4}**    Respondent does not contest that the facts summarized herein relating to her representation of the SNL employees and Backstreet, respectively, resulted in violations of the Rules of Professional Conduct.

### A.    The Sandia National Laboratories Employees

**{5}**    Respondent represented certain SNL employees in their efforts to challenge SNL's COVID-19 workplace policies. Respondent's organization, New Mexico Stands Up (NMSUp), wrote a letter on NMSUp letterhead to the Human Resources and Communications Director at SNL on July 29, 2021, which included the following statement:

> Please be advised that the undersigned Counsel represents a large group of employees at [SNL]. This letter serves as formal notice to cease and desist all actions related to mandates requiring employees to wear a face mask, submit to COVID-19 tests or be injected with the COVID-19 vaccine as a condition of employment.

**{6}**    This letter was executed electronically by "Jonathan Diener, Attorney" and "N. Ana Garner, Esq." and was copied to multiple SNL directors, but not to SNL's legal department. SNL's general legal counsel sent a response indicating that the SNL employees to whom the letter had been sent had legal representation and specifying direction of all related future correspondence to SNL's general legal counsel. Receipt of that response was acknowledged by Mr. Diener. Nevertheless, a second letter nearly identical to their first "notice to cease and desist," not directed to SNL's legal counsel, and signed by Respondent and Mr. Diener, was sent to "All Senior Managers." While Respondent denies writing or signing the letter, she does not contest that she approved the letter.

**B.     Back Street Grill, LLC**

**{7}**     Respondent was also counsel for Backstreet, in an appeal from the revocation of its food permit by the Environmental Health Department (EHD) before the City of Albuquerque's Office of Administrative Hearings (OAH). The OAH affirmed EHD's revocation of Backstreet's food permit on August 11, 2021. Nevertheless, Backstreet continued its restaurant operations. On August 19, 2021, the City of Albuquerque filed an emergency petition for a temporary restraining order and injunction in district court. The district court granted the temporary restraining order against Backstreet on August 24, 2021, and set a hearing to consider the injunction. Respondent agreed to accept service on behalf of her client Backstreet and filed a pleading titled "Acceptance of Service, and Response to Petition for TRO and My Right to Disqualify Any Judge Who Allowed Themselves to Be Injected with an Experimental Gene Therapy" (Acceptance of Service). In the Acceptance of Service Respondent made the following additional statements:

- Statement referring to the Governor of New Mexico, Michelle Lujan Grisham and "her partners in crime . . . ."

- Repeated statements referring to Governor Lujan Grisham as a tyrant.

- "Either our Supreme Court justices are blind or, alternatively, by their practice of medicine in all of our courts, which is what their latest COVID-crap to come out of them is, they are complicit in this made up production."

- "A restaurant refused to make its employees wear a face-diaper (because after all, you are breathing in your own shit), nor be the Nazi brownshirt enforcing any of the tyrant's latest rules, over which she has to be cracking up."

- "The government and the courts ain't following the rules, and neither is this client, nor the undersigned attorney."

- Statement that Governor Grisham "seized power with the glee of an adrenochrome addict."

- Statement referring to the legislature as "spineless tools."

- "I hope you will join us on the side of God, make your choice now. Your actions will expose you."

- "And let this be Notice of our removed . . . right to challenge this judge, and any subsequently assigned Judge i[f] she/he has taken the experimental gene therapy because they can't understand the bigger issues at hand now."

- Statement that opposing counsel was an "unethical opponent" and accusing opposing counsel of misleading "the court to imply, without exactly saying, nothing about the constitutionality of what began its attack on a citizen exercising constitution rights, AND DUTY to abolish or correct a government that has gone despotic."

**{8}** Following a hearing on the injunction, the district court ordered Backstreet to cease all operations immediately and for Respondent to withdraw the inflammatory statements in the Acceptance of Service. Respondent filed a withdrawal of her response and apologized for "any offense taken." Respondent subsequently filed a pleading titled "Notice of Suggestion of Death of Another New Mexico Business," stating that Backstreet was closed "and will never operate in New Mexico again, having been crushed out of existence by an over-reaching government."

## C.     Respondent's Rule Violations

**{9}** Respondent does not contest that her conduct described herein previously resulted in the following violations of the Rules of Professional Conduct:

(1)     Allowing her signature to be affixed to the letter sent to SNL was a communication with a person represented by counsel in violation of Rule 16-402.

(2)     Failing to provide competent representation to both clients, SNL employees and Backstreet, in violation of Rule 16-101.

(3)     Representing a client when the representation involved a concurrent conflict of interest with Respondent's personal interests/passion for the underlying issue—those personal interests compromising Respondent's professional judgment in violation of Rule 16-107(A)(2).

(4)     Asserting an issue with no "basis in law or fact for doing so that is not frivolous," by filing the *Notice of Suggestion of Death of Another New Mexico Business* in violation of Rule 16-301.

(5)     Knowingly making false statements of fact to a tribunal in filing the Acceptance of Service containing allegations that certain "government officials were criminals" and "spineless tools" and that the Governor of New Mexico "seized power with the glee of an adrenochrome addict" and alleging unsupported ethical violations of opposing counsel in violation of Rule 16-303(A)(1).

(6)     Engaging in conduct intentionally disruptive to a tribunal in the Backstreet Grill proceeding in violation of Rule 16-305(D).

(7)     "[U]sing means that have no substantial purpose other than to embarrass, delay or burden a third person," in the Backstreet proceeding in violation of Rule 16-404(A).

(8)     Making a statement that the Respondent knew "to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer," in the Backstreet Grill proceeding in violation of Rule 16-802(A).

(9)     Engaging in conduct prejudicial to the administration of justice in Respondent's representation of both clients in violation of Rule 16-804(D).

**{10}** For the above violations, Respondent consents to the discipline previously ordered by this Court, including this public censure.

**{11}** Notwithstanding Respondent's consent to the discipline imposed, we as the "final arbiter of attorney discipline," *In re Bristol*, 2006-NMSC-041, ¶ 27, 140 N.M. 317, 142 P.3d 905 (per curiam), nevertheless proceed to explain why the discipline imposed is appropriate to provide guidance to practitioners and to caution against similar misconduct.

## II.    DISCUSSION

**{12}** This Court has inherent authority under Article VI, Section 3 of New Mexico Constitution to independently decide the appropriate level of attorney discipline to impose, *see In re Treinen*, 2006-NMSC-013, ¶ 6, 139 N.M. 318, 131 P.3d 1282 (per curiam), and does "not defer to recommendations regarding what level of discipline is appropriate," *Bristol*, 2006-NMSC-041, ¶ 27. However, we do afford deference to the hearing committee's findings of fact, and while we review the disciplinary panel's conclusions of law and recommendations de novo, we give those conclusions and recommendations "'respectful consideration.'" *Bristol*, 2006-NMSC-041, ¶¶ 18, 26 (citation omitted). In making our "independent[] determin[ation of] the appropriate level of sanction to impose for [an attorney's] misconduct," this Court is also guided by the standards set by the American Bar Association (ABA). *In re Convisser*, 2010-NMSC-037, ¶ 42, 148 N.M. 732, 242 P.3d 299 (per curiam). Additionally, we remain mindful that "[t]he decision to discipline must rest solely upon the steps necessary to insure the future protection of the public, the reputation of the profession, and the orderly administration of justice." *In re Neundorf*, 1989-NMSC-052, ¶ 7, 108 N.M. 653, 777 P.2d 381 (per curiam).

**{13}** While we recognize that Respondent's conduct is concerning, with these standards in mind, we nevertheless conclude that deferred suspension, unsupervised probation, payment of costs, and this public censure are sufficient to safeguard "the public, the reputation of the profession, and the orderly administration of justice," and are consistent with the ABA standards on attorney discipline for the reasons that follow. *Id.*; *see also Convisser*, 2010-NMSC-037, ¶ 43.

## A.    Protection of the Public

**{14}** Respondent's inflammatory and misleading statements made in court filings harmed her clients, opposing counsel, the public, and various members of the judicial and the executive branches. This conduct harmed Respondent's client because in

making her offensive comments, Respondent placed her personal interest in the subject matter of the litigation above her client's interests—impairing Respondent's representation of her client. *See* Rule 16-101 (requiring an attorney to "provide competent representation to a client"); Rule 16-107(A)(2) (requiring an attorney to place a client's interests first); *see also In re Victor Marshall*, 2023-NMSC-006, ¶ 22, 528 P.3d 653 (per curiam) (noting that an attorney's free speech rights are limited especially while representing a client during a court proceeding); *Mezibov v. Allen*, 411 F.3d 712, 720-21 (6th Cir. 2005) (explaining that an attorney accepts restraints on "personal speech rights," when the reason for the speech is to advocate for the client's rights).

**{15}** Respondent's statements were also deleterious to opposing counsel, members of the judicial and executive branches, and the legal profession as a whole. The discipline imposed publicly renounces this behavior on behalf of the community, identifies how such statements violate our Rules of Professional Conduct, and protects the public by discouraging similar statements in the future by Respondent or other attorneys. *See In re Chakeres*, 1984-NMSC-088, ¶¶ 2, 7, 101 N.M. 684, 687 P.2d 741 (holding that public censure was proper discipline for an attorney who made misleading and improper statements of fact in a brief to an appellate court).

## B. Reputation of the Legal Profession and the Orderly Administration of Justice

**{16}** While "the ultimate purpose of attorney discipline is the protection of the public[,] . . . [t]his Court has made clear that it is equally concerned with the public's perception of the profession and the legal system." *In re Key*, 2005-NMSC-014, ¶ 8, 137 N.M. 517, 113 P.3d 340 (per curiam). To protect the public and preserve its perception of the profession, "[m]embership in the bar is a privilege burdened with conditions," *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066 (1991) (internal quotation marks and citation omitted), and lawyers are at all times officers of the court. *See Woodson v. Phillips Petroleum Co.*, 1985-NMSC-018, ¶ 17, 102 N.M. 333, 695 P.2d 483. "As officers of the court, . . . attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of [their clients] or that will obstruct the fair administration of justice." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 601 n.27 (1976) (Brennan, J., concurring).

**{17}** Respondent's conduct undoubtedly harmed the public's perception of the legal profession by making offensive and disrespectful statements in court and in public about opposing counsel, members of our judiciary, and other government officials. Respondent's statements were republished in various news outlets, widely circulating her misconduct and casting a negative light on New Mexico lawyers.

> Treating others with respect and abstaining from offensive conduct are not standards unique to the legal profession, but maintaining such standards of behavior is critical to the proper functioning of our adversarial system of justice. Without a steadfast commitment to treating others with respect and dignity, the reputation of our legal system will continue to diminish,

and the public's willingness to rely on our legal system to resolve disputes will continue to erode.

*In re Ortiz*, 2013-NMSC-027, ¶ 2, 304 P.3d 404.

**{18}** In *Ortiz*, the respondent made offensive remarks in court and in verbal and written communications between herself and opposing counsel regarding judges, opposing counsel, and other members of the state bar. *Id.* ¶ 16. The *Ortiz* Court noted that these comments, along with aggravating factors (similar to those present here), were sufficient to warrant suspension for six months. *Id.* While the *Ortiz* Court ultimately did not impose suspension in light of the respondent's diagnosed bipolar disorder, *id.*, *Ortiz* is nevertheless instructive in this matter.

**{19}** Here, Respondent not only made offensive remarks about opposing counsel and members of the judiciary, she also made remarks about other government officials and made these remarks in pleadings filed with the court. And unlike the respondent in *Ortiz*, Respondent communicated with persons represented by counsel.

**{20}** Respondent's conduct reflects poorly, not only on herself but on the legal profession as a whole, further eroding the public's already fragile confidence in our legal system. *See Ortiz*, 2013-NMSC-027, ¶ 2. This erosion of public confidence is "prejudicial to the administration of justice" and is professional misconduct. *See* Rule 16-804(D). Respondent's conduct not only harmed her client and cast a bad light on the legal profession, it also interfered with the orderly administration of justice by taking valuable time and resources from our judiciary to address her false, offensive, and misleading court filings. This impacted Respondent's client, judges, court staff, and importantly, all those in need of our judicial system's services. *See In re Allred*, 2001-NMSC-019, ¶ 21, 130 N.M. 490, 27 P.3d 977 (per curiam) ("Protection of the public includes safeguarding the resources of the legal system for the use of the public."); *see also In re Arrieta*, 1986-NMSC-045, ¶ 1, 104 N.M. 389, 722 P.2d 640 (per curiam) (explaining that failing to competently represent a client and making misrepresentations to the court is prejudicial to the administration of justice).

**{21}** We conclude the discipline imposed upon Respondent is appropriate to protect the public by requiring Respondent comply with the conditions of probation set forth in our previous order and to uphold the integrity of the legal profession with this public censure, which makes plain that the conduct described herein will not be tolerated.

## C. Consistent with ABA Standards

**{22}** The discipline imposed is also consistent with the standards set by the ABA. *See Convisser*, 2010-NMSC-037, ¶ 42. The ABA standards on attorney discipline instruct that the uncontested conduct here could warrant a lawyer's disbarment, suspension, or formal reprimand. *See* ABA *Standards for Imposing Lawyer Sanctions*[1] § 4.33

---

[1] *See, e.g.*, *Annotated Standards for Imposing Lawyer Sanctions* (Ellen. S. Rosen ed., American Bar Association 2d ed. 2019).

(warranting reprimand for negligently failing to realize that the lawyer's own interests conflict with the client's interests); *id.* § 4.51 (warranting disbarment for the lawyer's demonstrated lack of understanding of fundamental legal principles resulting in injury or potential injury); *id.* § 4.53 (warranting reprimand for the lawyer's failure to understand basic legal principles or negligence in judging the lawyer's own competence to take on a particular case that results in actual or potential injury); *id.* § 6.12 (warranting suspension for a lawyer's false statements made to a court that cause actual or potential injury to a party or cause adverse effects on the proceeding); *id.* § 6.13 (warranting reprimand for the lawyer's negligence in assessing the truth or falsity of statements made to a court that cause actual or potential injury to a party or cause adverse effects on a legal proceeding).

**{23}**     *To fashion the appropriate sanction, the ABA standards instruct* that courts should consider the duty violated, any actual or potential injury caused by the misconduct, the lawyer's mental state, and any aggravating or mitigating factors. *See id.* § 3.0. Relevant to Respondent's conduct here, lawyers in New Mexico have the following duties to conform with the Rules of Professional Conduct: to "maintain the respect due to courts of justice and judicial officers," to "not counsel or maintain any suit or proceeding which shall appear . . . to be unjust, nor any defense except such [believed] to be honestly debatable under the law of the land," to only use means "consistent with truth and honor, and . . . to never seek to mislead the judge or jury by any artifice or false statement of fact or law," to "maintain civility at all times, abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness unless required by the justice of the cause with which [the attorney is] charged." Rule 15-304 NMRA.

**{24}**     Respondent violated these duties through, among other things, her offensive remarks, false statements, and meritless claims made in court pleadings regarding judges and state officials, and by failing to provide competent representation to her clients. While the Disciplinary Board expressed concern regarding Respondent's health, there was no information presented to the Disciplinary Board, or this Court, regarding Respondent's mental state. Nevertheless, the following aggravating factors were presented: Respondent engaged in a pattern of misconduct, Respondent committed multiple offenses, and Respondent has substantial experience in the practice of law. *See Annotated Standards for Imposing Lawyer Sanctions* § 9.22(c), (d), (i) (2019).

**{25}**     In mitigation, Respondent has expressed remorse for the conduct described above, acknowledging she allowed her personal interests to impair her judgment, and Respondent has no prior disciplinary history. *See id.* § 9.32 (a), (l). While Respondent's uncontested misconduct and aggravating factors support the imposition of sanctions, we conclude that Respondent's expressed remorse and lack of disciplinary history support the discipline imposed, which is shy of outright suspension or disbarment. *See Neundorf*, 1989-NMSC-052, ¶ 7 ("If we are satisfied that an attorney can continue to engage in practice without endangering the public, the public interest is best served by permitting the attorney to do so."). Considering the uncontested misconduct together with the aggravating and mitigating factors we conclude the discipline imposed upon Respondent is warranted and consistent with the guidance provided by the ABA.

## III.    CONCLUSION

**{26}**    In closing, we remind Respondent "that the license to practice law is a conditional privilege. As a condition to that privilege, Respondent has the duty to act at all times, both professionally and personally, in conformity with our Rules of Professional Conduct." *Bristol*, 2006-NMSC-041, ¶ 34. In so doing Respondent must "abstain from all offensive personality," especially during the course of representing a client when she *must* place her client's interests above her own. Rules 15-304, 16-107(A)(2); *Marshall*, 2023-NMSC-006, ¶ 22. Finally, we caution Respondent and others against engaging in such offensive and unprofessional behavior in the future.

**{27}    IT IS SO ORDERED.**

**C. SHANNON BACON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**