2001-NMSC-019

27 P.3d 977

**In the Matter of Lawrence W. ALLRED, Esq., An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

No. 18,416.

Supreme Court of New Mexico.

July 27, 2001.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque, NM, for Disciplinary Board.

Michael W. Lilley, Las Cruces, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This matter, involving two consolidated sets of disciplinary charges, came before the Court upon recommendation of the disciplinary board to impose upon respondent, Lawrence W. Allred, a three-year suspension of his license to practice law. We adopt the recommendation and hereby suspend respondent pursuant to Rule 17–206(A)(2) NMRA, with the second and third years of suspension deferred in favor of supervised probation with conditions.

{2} Formal disciplinary charges were filed in March 2000, alleging that respondent had engaged in a pattern of neglect and failure to communicate in each of three criminal cases; respondent represented the defendant in each case pursuant to a contract with the Public Defender Department. In addition, respondent was charged with failure to cooperate with disciplinary counsel in the discharge of her duties. Although he provided an initial response to the first complaint received by disciplinary counsel, respondent failed to provide additional information she requested and also failed to provide even an initial response to the second and third complaints.

{3} The second and third complaints included in the first set of charges were prototypical of subsequent complaints and formal charges that are also before this Court. Both complaints involved clients that respondent had represented at trial on criminal charges, who then wanted to appeal their convictions. Respondent filed a notice of appeal for only one of these clients and failed to timely file docketing statements in the other two cases. In a pattern that would be repeated in the complaints addressed in the second set of charges, respondent continued his failure and refusal to timely file docketing statements, despite letters from his clients and the Appellate Public Defender and motions the Appellate Public Defender filed with the Court of Appeals to compel respondent to file the docketing statements. Not until the Court of Appeals issued show cause orders did respondent file the docketing statements in each of the two cases. One docketing statement was more than eighteen months late; the other was more than a year late.

{4} Respondent's answer to the first set of charges admitted the general allegations but contended that these failures were isolated lapses of his obligations. The answer also alleged that respondent had been "suffering from severe personal and emotional problems which precipitated his failure to timely file documents." Respondent's answer stated he was taking steps to address these problems.

{5} After the issue of personal problems was raised in the answer, respondent agreed to undergo a psychological evaluation. The resulting report recognized a variety of adjustment issues that caused respondent problems, particularly during periods of high stress. The report stated that respondent's first line of defense when criticized during such periods is stubborn noncompliance and noted that respondent's use and abuse of alcohol increased during these times. The evaluating psychologist recommended that respondent abstain from the use of alcohol, attend an outpatient alcohol treatment program, and undergo psychological counseling. Finally, the report recited respondent's intention to close his practice and to work only for other attorneys and recommended that course of action.

{6} After the psychological evaluation, the parties entered into a conditional agreement

admitting allegations and consent to discipline that provided for a three-year deferred suspension, during which respondent would be placed on supervised probation. The consent agreement incorporated the recommendations of the psychological evaluation, including abstinence from alcohol and participation in an outpatient treatment program, and provided for random drug tests. The consent agreement also provided that if any disciplinary complaints filed against respondent were found to have sufficient merit to warrant the filing of additional charges, disciplinary counsel could seek revocation of the deferred suspension. Respondent signed the consent agreement on June 20, 2000, and it was submitted to the hearing committee the same day. On July 6, 2000, the hearing committee issued its decision recommending that the consent agreement be accepted; the consent agreement was then referred to a panel of the disciplinary board for consideration.

{7} On July 19, 2000, disciplinary counsel received correspondence from the clerk of the New Mexico Court of Appeals enclosing a copy of a show cause order issued by the court on July 6, 2000. The order recited that on May 21, 2000, respondent was ordered to show cause in writing why he should not be sanctioned for failing to file the record proper in another criminal appeal and that respondent had not filed a written response, as ordered. The July 6, 2000, order also stated that on June 6, 2000, the court had ordered respondent to show cause in writing why he should not be sanctioned for failing to file a docketing statement in yet another criminal case; respondent had failed to respond as ordered in that case as well. The response to the June 6, 2000, order was due June 16, 2000, four days before respondent executed the consent agreement.

{8} On July 27, 2000, respondent appeared before the New Mexico Court of Appeals as directed by the July 6, 2000, show cause order. He revealed to the court that he had two more cases pending before the court in which he had failed to timely file docketing statements or requests for extension; these docketing statements were due between the time respondent was served with the July 6,

2000, show cause order and the date of the show cause hearing.

{9} During this same period of time, disciplinary counsel became aware that respondent had not begun to receive counseling, despite the affirmative statement in his answer to the initial charges that he "is seeking professional help for his personal and emotional problems." Based on the additional instances of respondent's pattern of neglecting his clients' criminal appeals, including two deadlines missed after he signed the consent agreement, and his continuing failure to begin therapy, disciplinary counsel filed a motion asking the board panel to reject the consent agreement and remand the matter to the hearing committee. Respondent consented to the remand.

{10} The second set of disciplinary charges was filed on August 23, 2000; these charges addressed additional complaints filed by former clients, as well as a chief disciplinary counsel complaint based on the July 6th show cause order issued by the New Mexico Court of Appeals. One of the counts addressed the allegations of a complaint filed by a divorce client; this complaint, which also alleged inaction and failure to communicate, contradicted respondent's statements that his failures were the result of "public defender burnout."

{11} After the two sets of disciplinary charges were consolidated for hearing, the parties entered into extensive stipulations of fact and law. The stipulations reflected respondent's admission that his conduct violated certain provisions of the Rules of Professional Conduct, including Rule 16–103 (diligence); Rule 16–104 (communication with client); Rule 16–302 (expediting litigation); Rule 16–803(D) (cooperation with disciplinary counsel), and Rule 16–804(H) (conduct reflecting adversely on fitness to practice law).

{12} Respondent did not stipulate that his failure to timely file docketing statements constituted a violation of Rule 16–101 (competence) and Rule 16–804(D) (conduct prejudicial to administration of justice.) The hearing committee found that respondent had failed to provide competent representation and engaged in conduct prejudicial to

the administration of justice, in violation of Rules 16–101 and 16–804(D).

{13} The joint stipulations of the parties also addressed factors in aggravation and mitigation. Aggravating and mitigating factors, where present, may increase or decrease the amount of discipline imposed. *ABA Standards for Imposing Lawyer Sanctions*, §§ 9.21 and 9.31(1991 as amended Feb. 1992).

{14} The stipulated aggravating factors were respondent's substantial experience in the practice of law, having been licensed since 1980, the commission of multiple ethical infractions, the existence of a pattern of misconduct, and two prior disciplinary proceedings addressing infractions almost identical to those before the Court today. *See id* at § 9.22 (definition and list of aggravating factors). An additional aggravating factor found by the committee was the vulnerability of respondent's clients based upon their indigency and incarceration. *See id.* at § 9.22(h) (vulnerability of victim). We agree and consider that aggravating factor as well as the stipulated aggravating factors.

{15} The stipulated mitigating factors were that respondent's prior discipline was remote in time, having been imposed in 1987 and 1989, that his misconduct did not evince a dishonest or selfish motive, and that respondent enjoys a good reputation as a trial lawyer. We agree that remoteness in time of prior discipline, absence of a dishonest or selfish motive, and a good reputation as a lawyer are valid mitigating factors. *See id.* at § 9.32 (factors in mitigation). There is a difference, however, between not having a prior disciplinary record and having one, albeit remote in time. This Court will determine on a case-by-case basis the extent to which such factors will impact the discipline imposed. Where, as here, the prior discipline was imposed more than ten years previously, its relevance as an aggravating factor will likely depend on the similarity between the prior violations and the current ones. "Repeated instances of the same conduct for which a lawyer previously has been disciplined generally will result in more severe discipline." *In re Schmidt*, 118 N.M. 213, 215, 880 P.2d 310, 312 (1994); *see also In re Rivera*, 112 N.M. 217, 218, 813 P.2d 1015, 1016 (1991) (suspension generally appropriate sanction when attorney has been reprimanded but continues to engage in same or similar misconduct).

{16} In this case, the similarity is striking. In the 1987 case, *In re Allred*, 106 N.M. 227, 741 P.2d 830, respondent not only neglected a client's legal matters but also failed to respond to the client's requests for information and disciplinary counsel's request for a response to the client's subsequent complaint. In the 1989 case, *In re Allred*, 108 N.M. 666, 777 P.2d 905, respondent failed to respond to an order of the Tenth Circuit Court of Appeals for him to show cause why he should not be disciplined for failing to complete a client's appeal. Respondent also failed to respond to disciplinary counsel's inquiries. Respondent was disbarred by the federal appeals court and received a public censure and a period of supervised probation from this Court.

{17} The similarities do not end there. During the 1989 case, respondent also raised the issue of his excessive alcohol use. The order of discipline included a requirement that he "abstain from the use of alcohol and . . . continue to receive counseling for alcohol abuse[.]" *Id.* at 667, 777 P.2d at 906. In view of the similarity of the prior disciplinary problems, including issues concerning respondent's personal problems, we find that the prior discipline may be considered an aggravating factor.

{18} This is especially appropriate in light of respondent's continued demonstration of obstinance and willful refusal to pursue courses of action recommended to help him. The hearing committee found that respondent's delay in seeking professional help for his personal and emotional problems and his unilateral termination of counseling after six sessions belied any contention that he had demonstrated a prolonged period of successful rehabilitation. Because the purpose of lawyer discipline is the protection of the public, demonstration of a prolonged period of rehabilitation is required for the recognition of any mental health or substance abuse

problem as a mitigating factor. *See ABA Standards for Imposing Lawyer Sanctions,* § 9.32 (factors in mitigation) Only if the lawyer has demonstrated a prolonged period of rehabilitation is it reasonable to believe that the condition is no longer likely to result in harm to the public. *In re Smith,* 115 N.M. 769, 771, 858 P.2d 857, 859 (1993). Respondent's pattern of recalcitrance does not permit that conclusion in this case.

{19} During the present case, respondent testified before the hearing committee that after the 1989 case, he abstained from alcohol for a year but did not attend counseling. When asked whether his failure to receive counseling for alcohol abuse, as ordered by this Court in 1989, reflected the obstinate behavior he reported during the psychological examination, respondent asked rhetorically whether it was obstinate not to go to counseling to help him do what he was actually doing. The short answer to respondent's question is in the affirmative. Counseling for alcohol abuse could have prevented respondent's abstinence from lasting only one year. More importantly, all lawyers licensed by this Court are obligated to obey the orders of this Court as well as those entered by the lower courts. "Willful violation of a court's order without testing its validity through established processes directly affects a court's ability to discharge its duties." *State v. Cherryhomes,* 114 N.M. 495, 498, 840 P.2d 1261, 1264 (Ct.App.1992), citing *United States v. Dickinson,* 465 F.2d 496, 510 (5th Cir.1972). The legal system cannot operate properly and with the confidence of the public if licensed lawyers simply ignore the portions of court directives they do not want to abide.

{20} Respondent's failure to comply with this Court's 1989 order is not the basis for our ruling that his prior discipline is an aggravating factor, despite remoteness in time. The basis is the similarity of offenses as well as the similarity of respondent's defense. Respondent's passive defiance of the 1989 order, coupled with his ongoing recalcitrance in the two cases now before us, convinces this Court that his acknowledgment of misconduct is not accompanied by internal acceptance. Indeed, at every stage of this proceeding, respondent's presentation has suggested that he believes he should receive special consideration because he represented public defender clients for many years, did a good job for these public defender clients at trial, and believed the appeals they wanted to pursue were frivolous. We agree, however, with the following statement of the disciplinary board in a formal reprimand filed on November 30, 2000, in which both private criminal clients and public defender contract clients were neglected:

> "Your duties to these two categories of clients were identical. There is not a lesser standard of diligence and promptness in cases handled pursuant to a public defender contract."

*In re Schoeppner,* Vol. 39, No. 49 State Bar Bulletin 4 (December 7, 2000). While the status of the client can affect the lawyer's duties, for example, when the client is operating under an infirmity, the Rules of Professional Conduct certainly do not permit a lesser level of professionalism when representing indigents or other disadvantaged litigants.

{21} We are also concerned that respondent does not seem to appreciate the harm done by his self-described obstinance. The resources of the judicial system are thinly stretched. When the Appellate Public Defender must repeatedly call and write trial counsel, and, receiving no response, file motions to compel trial counsel to file the docketing statement, precious resources are diverted. When the New Mexico Court of Appeals must repeatedly issue show cause orders to the same lawyer to motivate completion of docketing statements and the record proper, limited judicial resources are needlessly expended. Protection of the public includes safeguarding the resources of the legal system for the use of the public.

{22} The irony is, by all accounts, that respondent is a good trial lawyer, who has provided quality representation to indigent criminal defendants. No New Mexico attorney should indulge in the notion, however, that doing what a professional should do will relieve him or her of ethical responsibili-

ties they do not want to discharge. It is the hope of this Court that one year of actual suspension will provide the opportunity and motivation for respondent to follow through on the treatment needed for him to learn to recognize and address the personal problems that have lead him astray in times of stress.

{23} Now, therefore, it is ordered that the recommendation of the disciplinary board hereby is approved and Lawrence W. Allred hereby is suspended from the practice of law for a period of three years pursuant to Rule 17–206(A)(2) NMRA 2001;

{24} It is further ordered that the second and third years of the suspension period shall be deferred in favor of supervised probation if respondent satisfies the following terms and conditions during the one-year period of actual suspension:

(1) Respondent shall follow the recommended treatment plan of the evaluating psychologist, including attending counseling as frequently and for as long as recommended. If requested by disciplinary counsel, respondent shall execute a medical release form and provide it to disciplinary counsel for release of information pertaining to the treatment and his progress;

(2) Respondent shall abstain from the use of alcohol;

(3) Respondent shall submit to and pay for random drug screens for the presence of alcohol, he shall present for drug screens at the site designated by disciplinary counsel within eight hours of a request for testing, and he shall provide disciplinary counsel with a telephone number at which he can always be reached or at which he will receive messages in sufficient time to submit to a random drug screen within eight hours of a request; and

(4) Respondent shall be permitted to work as a paralegal under the supervision of a New Mexico licensed attorney during the period of his actual suspension.

{25} It is further ordered that during the second and third years of the deferred suspension, respondent shall satisfy the following terms and conditions during the period of supervised probation:

(1) Respondent shall work for other licensed New Mexico attorneys, either as an employee or on a contract basis. Respondent shall not directly contract with any client to provide representation to them;

(2) The licensed New Mexico attorney or attorneys for whom respondent will work must be approved by disciplinary counsel and must agree to submit quarterly reports on respondent's performance to disciplinary counsel;

(3) Respondent shall follow the recommended treatment plan of the evaluating psychologist, including attending counseling as frequently as recommended. If requested by disciplinary counsel, respondent shall execute a medical release form and provide it to disciplinary counsel for release of information pertaining to the treatment and his progress;

(4) Respondent shall abstain from the use of alcohol;

(5) Respondent shall submit to and pay for random drug screens for the presence of alcohol, he shall present for drug screens at the site designated by disciplinary counsel within eight hours of a request for testing, and he shall provide disciplinary counsel with a telephone number at which he can always be reached or at which he will receive messages in sufficient time to submit to a random drug screen within eight hours of a request;

(6) Respondent shall provide disciplinary counsel with written monthly reports concerning the discharge of his assigned duties, the volume of his workload, and his physical and mental well-being;

(7) Respondent shall advise all prospective employers of the requirement of providing quarterly reports to disciplinary counsel; and

(8) Respondent shall abide by all provisions of the Rules of Professional Conduct.

{26} It is further ordered that at the conclusion of the second year of probation, respondent shall seek reinstatement to non-probationary status pursuant to Rule 17–214(H) NMRA;

{27} It is further ordered that respondent shall pay the costs of this proceeding on or

before August 27, 2001, in the amount of $1,436.23 with interest accruing on the unpaid balance at the rate of eight and one-half percent (8½%) per annum; and

{28} It is further ordered that costs shall be reduced to a transcript of judgment and must be paid in full prior to any reinstatement to non-probationary, active status.

{29} It is so ordered.