The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date:** March 13, 2023

**NO. S-1-SC-37698**

**IN THE MATTER OF**
**VICTOR R. MARSHALL,**
**An Attorney Suspended from**
**the Practice of Law in the**
**Courts of the State of**
**New Mexico**

Anne L. Taylor, Chief Disciplinary Counsel
Jane Gagne, Assistant Disciplinary Counsel
Albuquerque, NM

for The New Mexico Disciplinary Board

The Baker Law Group
Jeffrey L. Baker
Renni Zifferblatt
Albuquerque, NM

for Respondent

**OPINION**

**PER CURIAM.**

{1}     Our judicial system depends on the public's confidence in its fairness and authority. It cannot function if the public is misled to believe that judicial officers lack the necessary integrity or qualifications to perform their duties. The Preamble to Rule Set 16 NMRA, the New Mexico Rules of Professional Conduct, reflects this essential truth. The Preamble states that it is the duty of "a lawyer [to] further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority." Rule Set 16-Preamble. A corollary of this basic principle is that false or reckless statements made by an attorney "can unfairly undermine public confidence in the administration of justice." Rule 16-802 NMRA comm. cmt. 1; Rule 16-802(A) NMRA.

{2}     In this opinion, we address the failure of Respondent Victor Marshall to fulfill his professional duties by making numerous unfounded statements about the integrity of a judge presiding over a case to which Marshall's clients were parties. In doing so, we first clarify the standard for determining whether an attorney has made statements about the "integrity of a judge" with "reckless disregard as to [the statements'] truth or falsity," in violation of Rule 16-802(A) of the Rules of

Professional Conduct. We hold that a lawyer makes a statement with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge when the lawyer makes the statement in the absence of an objectively reasonable factual basis. Applying this standard, we conclude that Marshall violated Rule 16-802(A). We further conclude that Marshall's conduct also violated Rule 16-301 NMRA (prohibiting the filing of frivolous motions) and Rule 16-804(D) NMRA (prohibiting conduct "prejudicial to the administration of justice"). Because Marshall continues to deny wrongdoing and steadfastly refuses to take responsibility for his actions, we believe discipline is necessary to prevent him from engaging in this type of conduct in the future. Therefore, Marshall is indefinitely suspended from the practice of law for at least eighteen months.

## I.     BACKGROUND

{3}     This disciplinary proceeding arose out of statements Marshall made in pleadings on appeal from an adjudication regarding water rights in the San Juan River.[1] The adjudication was initiated in 1975 and concerned rights asserted by the Navajo Nation, the United States, and the State of New Mexico, in addition to

---

[1]Marshall also released a statement to the press quoting some of the allegations he made in the pleadings. Because Marshall's conduct in filing the pleadings is sufficient to prove the disciplinary charges, we need not address the press release.

individual water users and water-user associations. Beginning in 2006, Marshall represented the San Juan Agricultural Water Users Association and other groups and individuals interested in the adjudication. Three years later, in 2009, Judge James J. Wechsler, retired, was appointed to preside over the adjudication as judge pro tempore. The Navajo Nation, the United States, and the State of New Mexico had reached a settlement agreement regarding the Navajo Nation's water rights. *See State ex rel. State Engineer v. United States*, 2018-NMCA-053, ¶¶ 4-5, 425 P.3d 723. In 2013 Judge Wechsler entered an order approving the settlement over objection from Marshall's clients. Marshall appealed the order to the Court of Appeals. *See id.* ¶¶ 8-9.

{4} While the case was pending in the Court of Appeals, Marshall filed an emergency motion with the Court of Appeals to disqualify Judge Wechsler from the adjudication. The motion and supportive brief were replete with attacks on Judge Wechsler's integrity and candor. Marshall began his pleading by asserting that, in early 2018, "disquieting rumors about Judge Wechsler [had circulated] in the New Mexico Legislature, prompting some legislators to ask whether or not the rumors could be substantiated." Marshall then alleged that Judge Wechsler had violated Rule 21-211 NMRA by not disclosing that he "previously worked as a lawyer for the Navajo Nation" and by exhibiting bias in favor of his "former clients." According

to Marshall, because Judge Wechsler had worked for DNA People's Legal Services (DNA) as an attorney and had lived on the Navajo Reservation during the early 1970s, he possessed "extrajudicial knowledge about the Navajo Nation" from which he could draw in order "to award water to the Navajo people—the people he represented as an attorney." Marshall claimed that DNA was "an agency and instrumentality of the Navajo Nation" and, as a result, Judge Wechsler had "a one-way bias" in favor of the Navajo Nation. Marshall also alleged that Judge Wechsler had not "act[ed] with independence, integrity, and impartiality, to avoid impropriety or even the appearance of impropriety, and to promote public confidence in the judiciary." Marshall claimed "the record provides ample evidence of bias and favoritism during these proceedings." He specifically stated that Judge Wechsler "favored his former client" through his substantive and procedural decisions in the adjudication. Finally, Marshall concluded his brief by asserting that "the public might reasonably wonder whether the judge fixed this case for his former client."

{5}     The Court of Appeals denied Marshall's motion to disqualify Judge Wechsler from the case and, based on Marshall's statements impugning Judge Wechsler's integrity, imposed sanctions against him and awarded attorney's fees to the Navajo Nation and the United States. The Court found that Marshall's allegations were "void of any factual foundation" and that "[b]asic inquiry and simple investigation

4

would or should have informed [Marshall] that the motion was without factual foundation." The Court concluded that Marshall had filed "a frivolous motion" that "needlessly caused [the] Court and the parties to expend resources," had "violated the Rules of Professional Conduct," and had "attempted to discredit a judge with absolutely no basis for doing so." It referred the matter to the Disciplinary Board of the Supreme Court of the State of New Mexico (Disciplinary Board).

{6} Marshall responded by filing a motion for rehearing. Now on notice that his conduct before the Court likely violated the Rules of Professional Conduct, he nonetheless repeated his claim that Judge Wechsler worked for the Navajo Nation because he once served as counsel for DNA, and again asserted that DNA was an "agency or instrumentality" of the Navajo Nation. Marshall complained that the Court of Appeals panel had been misled by counsel for the Navajo Nation and claimed that "new evidence" offered support for "the legitimate questions which the acequias raised under Rule 21-211." He attached a 1971 New Mexico Law Review article and a 1969 DNA newsletter as the purported evidence.

{7} Shortly thereafter, Disciplinary Counsel filed a specification of charges against Marshall with the Disciplinary Board, alleging that Marshall violated the Rules of Professional Conduct by "attacking Judge Wechsler's integrity [without] basis in fact or law." *See* Rule 17-309 NMRA (providing for the institution of formal

disciplinary proceedings and designation of a hearing officer or committee). After the Court of Appeals summarily denied his motion for rehearing, (Order on Motion for Rehearing, *State ex rel. State Engineer v. United States*, A-1-CA-33535 (N.M. Ct. App. May 14, 2018)) and having twice been placed on notice that his statements calling into question Judge Wechsler's integrity likely violated his ethical obligations, Marshall filed a petition for writ of certiorari in this Court (Acequias' Petition for Certiorari Concerning Rule 21-211 and Sanctions, *State ex rel. State Engineer v. United States*, S-1-SC-37100 (N.M. June 13, 2018)) reprising his claim that Judge Wechsler had "concealed his ties to the Navajo Nation in order to award water to his former clients without a trial."

{8} This Court denied Marshall's petition for writ of certiorari (Order, *State ex rel. State Engineer v. United States*, S-1-SC-37100 (N.M. Aug. 13, 2018)), and a committee of the Disciplinary Board (hearing committee) subsequently conducted a hearing on the disciplinary matter. The hearing committee concluded that Marshall violated Rules 16-301, 16-802(A), and 16-804(D). It specifically found that Marshall violated Rule 16-802(A) "by making statements with reckless disregard as to the truth of the statements concerning the integrity of a judge." The committee recommended that Marshall be suspended from the practice of law indefinitely.

{9} Upon Marshall's request, a panel of the Disciplinary Board (hearing panel)

6

held a hearing on the committee's findings. The hearing panel largely adopted the findings of the hearing committee, concluding, "Sufficient evidence supports the finding that a reasonable attorney *would not* objectively and reasonably believe that Judge Wechsler either had an actual conflict or a material appearance of a conflict in the case." Because Marshall failed to admit wrongdoing or express remorse, the hearing panel was concerned that Marshall might engage in similar conduct going forward and therefore recommended indefinite suspension.

{10} The hearing panel then petitioned this Court to approve the findings of the hearing committee and suspend Marshall from the practice of law indefinitely. Marshall replied to the petition, alleging "serious legal and constitutional errors" committed by the hearing committee and hearing panel. Following full briefing and oral argument, we concluded that Marshall violated Rules 16-802(A), 16-301, and 16-804(D). Pursuant to Rule 17-206(A)(3) NMRA, we issued an order indefinitely suspending him from the practice of law. This opinion sets out our reasoning in issuing that order.

**II.     DISCUSSION**

**A.     Standard of Review**

{11} "[T]he hearing committee is the entity responsible for taking evidence in disciplinary proceedings," and we therefore view "the evidence in the light most

7

favorable to the hearing committee's decision and resolv[e] all conflicts and reasonable inferences in favor of the decision reached by the hearing committee." *In re Bristol*, 2006-NMSC-041, ¶¶ 16, 26, 140 N.M. 317, 142 P.3d 905 (per curiam). We defer to the hearing committee's factual determinations if they are supported by substantial evidence. *Id.* ¶ 16. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McDonald v. Zimmer Inc.*, 2020-NMCA-020, ¶ 23, 461 P.3d 930 (internal quotation marks and citation omitted). Our interpretation of the rules and our review of disciplinary bodies' legal conclusions is de novo. *See Bristol*, 2006-NMSC-041, ¶¶ 18, 27 (confirming that this Court reviews a hearing committee's legal conclusions under the same standard of review applied by a hearing panel, which is de novo).

**B.     Marshall Violated Rule 16-802(A) by Making Statements About Judge Wechsler's Integrity with Reckless Disregard for Their Truth or Falsity**

**1.     A lawyer makes a statement with reckless disregard for its truth or falsity when the lawyer lacks an objectively reasonable factual basis for the statement**

{12}     Marshall's central argument is that the hearing committee erred in finding he had acted with reckless disregard for the truth or falsity of his statements when he made his allegations about Judge Wechsler's integrity. Marshall's argument requires us to first elucidate the proper standard to apply when determining whether a statement has been made with reckless disregard for purposes of applying Rule 16-

8

802(A).

{13} The same rules of construction apply to the Rules of Professional Conduct as are applicable to the interpretation of statutes. *Cf. Kipnis v. Jusbasche*, 2017-NMSC-006, ¶ 10, 388 P.3d 654 ("When construing our procedural rules, we use the same rules of construction applicable to the interpretation of statutes." (internal quotation marks and citation omitted)). "We begin by examining the plain language of the rule as well as the context in which it was promulgated, including the history of the rule and the object and purpose." *State v. Sanchez*, 2020-NMSC-017, ¶ 12, 476 P.3d 889 (internal quotation marks and citation omitted). "When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

{14} Rule 16-802(A) provides, "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." The plain language of the rule is straightforward. First, Rule 16-802(A) distinguishes statements that a lawyer *knows* to be false from those for which the lawyer displays a "reckless disregard" as to their truth or falsity. Both types of conduct are

prohibited, but Marshall was charged by the hearing committee with violating only the latter.

{15}     Second, "reckless disregard" is readily defined. *Black's Law Dictionary* defines "reckless" as "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk." *Reckless*, *Black's Law Dictionary* (11th ed. 2019). It defines "disregard" as "[t]he action of ignoring or treating without proper respect or consideration." *Disregard*, *Black's Law Dictionary* (11th ed. 2019). Consequently, *Black*'s defines "reckless disregard" as a "[c]onscious indifference to the consequences of an act." *Reckless disregard*, *Black's Law Dictionary* at 594 (11th ed. 2019). Considering these definitions together, it is plain that "having reckless disregard as to [the truth or falsity of a statement]" means displaying a conscious indifference as to whether the statement has a factual basis or not, without regard for the consequences of the statement.

{16}     It is equally plain, given this construction of Rule 16-802(A), that the speaker *need not know* that a statement is false to display a "reckless disregard" for the truth or falsity of the statement. It is enough that the speaker has no adequate factual basis for making the statement. Indeed, if a Rule 16-802(A) determination that a speaker exhibited "reckless disregard as to [a statement's] truth or falsity" required a finding

10

that the speaker knew the statement to be false, the first part of the rule would be superfluous. *See State v. Vest*, 2021-NMSC-020, ¶ 18, 488 P.3d 626 (reiterating that statutes should not be interpreted to render any part superfluous). Speaking in the absence of an adequate factual grounding creates "a substantial and unjustifiable risk of harm to others" arising from the possibility that the statement is not, in fact, truthful. *Reckless*, *Black's Law Dictionary* (11th ed. 2019). Moreover, Rule 16-802(A)'s focus on a statement's truth or falsity makes clear that the factual basis required must be measured objectively; the rule does not inquire whether the speaker *believes* the statement to be true but whether it *is* true. Accordingly, we conclude that the plain language of Rule 16-802(A) establishes that, in determining whether an attorney has exhibited reckless disregard in making a statement about the integrity or qualifications of a judicial officer, the proper inquiry is whether the attorney's factual basis[2] for making the statement at issue was objectively reasonable.

{17}	Notwithstanding this plain language, Marshall argues that we should adopt a standard based on First Amendment jurisprudence governing civil defamation

---

[2]Just as we reject imposing a requirement that the statement be, in fact, false, so we reject a requirement that it be demonstrably true. What is important is whether the attorney has exhibited a conscious indifference to the statement's truth or falsity. If an attorney possesses an objectively reasonable factual basis for making a statement, the attorney cannot be said to be indifferent to its truthfulness.

11

actions arising from statements critical of public officials. He invites us to apply an "actual malice" standard to alleged violations of Rule 16-802(A), which would require the disciplinary authority alleging reckless disregard to prove (1) that the statement made by the attorney was in fact false; and (2) that the attorney made the false statement "with a high degree of awareness of probable falsity or entertained serious doubts as to the truth of his publication." *See In re Green*, 11 P.3d 1078, 1083-85 (Colo. 2000) (en banc) (per curiam) (text only)[3] (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)). We decline this invitation.

{18}    Rule 16-802 is derived from the American Bar Association's ABA Model Rule 8.2,[4] which addresses the same conduct. The fifty states have adopted a rule that is identical or substantially similar to ABA Model Rule 8.2. *See* Am. Bar Ass'n, CPR Policy Implementation Comm., *Variations of the ABA Model Rules of*

---

[3]The "text only" parenthetical as used herein indicates the omission of all of the following—internal quotation marks, ellipses, and brackets—that are present in the quoted source, leaving the quoted text itself otherwise unchanged.

[4]Available at https://www.americanbar.org/groups/professional_ responsibility/policy/ethics_2000_commission/e2k_rule82/ (last visited Mar. 3, 2023) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.").

*Professional Conduct: Rule 8.2: Judicial and Legal Officials* (Dec. 12, 2018).[5] Our review of the law of these jurisdictions reveals that a majority have embraced an objective standard governing the rule, while a small minority apply a subjective, actual malice standard. *See In re Cobb*, 838 N.E.2d 1197, 1212-13 (Mass. 2005) ("A majority of state courts that have considered the question have concluded that the standard is whether the attorney had an objectively reasonable basis for making the statements."). In *Cobb*, the Massachusetts Supreme Court expressly addressed an attorney's claim of free speech protections "when defending against charges that he impugned the integrity of a judge, without basis, during a pending case." *Id.* at 1211. After examining the approaches taken by other states, the court determined that a state's "interest in protecting the public, the administration of justice, and the legal profession supports use of an objective knowledge standard in attorney discipline proceedings involving criticism of judges in pending cases." *Id.* at 1214 (citing *In re*

---

[5]Available at https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/mrpc_8_2.pdf (last visited Mar. 3, 2023). The jurisdictions that adopt the model rule but deviate from the exact language differ in the kinds of officials that the rule covers. *See, e.g.*, Mass. R. Prof. Conduct 8.2 (applying rule only to "a judge or a magistrate, or . . . a candidate for appointment to judicial or legal office"); R. Regulating Fla. Bar 4-8.2(a) (applying rule to a "judge, mediator, arbitrator, adjudicatory officer, public legal officer, juror or member of the venire, or candidate for election or appointment to judicial or legal office").

*Graham*, 453 N.W.2d 313, 322 (per curiam) (Minn. 1990)).

{19}    The Colorado Supreme Court has held otherwise. In adopting the actual malice test for attorney discipline cases involving criticism of a judge, that court emphasized the interest in protecting attorney criticism of judges to "safeguard[] public discussion of governmental affairs." *Green*, 11 P.3d at 1085. It noted, "Restrictions on attorney speech burden not only the attorney's right to criticize judges, but also hinder the public's access to the class of people in the best position to comment on the functioning of the judicial system." *Id.* The *Green* Court concluded that those interests warranted applying the actual malice test to disciplinary cases in which an attorney makes a statement of fact, "proven . . . false," that is critical of a judge. *Id.*

{20}    We agree with the majority of states that have adopted the objective standard. Not only is this standard consistent with the plain language of Rule 16-802(A), it is also the approach most consistent with the rule's purpose, which is to protect the public and the public's perception of the legal profession and our judicial system. *See In re Key*, 2005-NMSC-014, ¶ 8, 137 N.M. 517, 113 P.3d 340 (per curiam); *see also In re Ordaz*, 1996-NMSC-034, ¶ 16, 121 N.M. 779, 918 P.2d 365 (per curiam) ("[I]t is not the purpose of the disciplinary system to punish attorneys, but to protect the public."). While jurisdictions that apply the actual malice test purport to do so to

protect the public's interest in a fair and honest judiciary by applying a heightened standard to statements made by those "in the best position to comment" on the judiciary, *Green*, 11 P.3d at 1085, we conclude that the public's interest is best served by *ensuring* that an attorney has an objectively reasonable basis for challenging the integrity or qualifications of a judicial officer.

{21}    Indeed, the proximity of attorneys to judicial officers necessitates a rule prohibiting attorneys from making baseless accusations against them. When an attorney casts unfounded doubt on the integrity of a judge, the public's perception of the legal system is at great risk because attorneys are rightly perceived by the public as being in a unique position to comment on the judiciary. *See Anthony v. Virginia State Bar, ex rel. Ninth Dist. Committee*, 621 S.E.2d 121, 126 (Va. 2005) ("Because lawyers have special access to information within the judicial system, their statements may pose a threat to the fairness of a pending proceeding, such statements being likely perceived as especially authoritative."). Requiring that attorneys have an objectively reasonable factual basis for making a statement about the integrity of a judge provides an essential safeguard against this risk. Such a requirement does not deprive attorneys of their free-speech rights in pending cases; it simply means that attorneys must not make accusations against judicial officers in the absence of an adequate factual grounding. *See Cobb*, 838 N.E.2d at 1214.

15

{22} Our conclusion is unchanged by the fact that Rule 16-802(A) includes the heading "Defamation," while ABA Model Rule 8.2 does not. Marshall argues that "Rule 16-802 includes the word 'Defamation' because the rules of ethics *must comply* with the First Amendment's standards for defamation of a public official" (emphasis added). Yet the United States Supreme Court has recognized that attorney speech may be regulated without running afoul of the First Amendment, particularly where the conduct at issue arises in a pending case. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991) (stating that "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed" and citing prior authority for the proposition that "lawyers in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be"). Attorneys are officers of the court, and "[m]embership in the bar is a privilege burdened with conditions." *Id.* at 1066 (internal quotation marks and citation omitted).

{23} Additionally, while Marshall draws our attention to the heading of Rule 16-802(A), he ignores the heading for Article 8 of the Rules of Professional Conduct, of which Rule 16-802(A) is a part. That heading makes clear that the rules set out in Article 8 are intended to "Maintain[] the Integrity of the Profession," not protect the reputational interests of individual lawyers or judges—the defining quality of a

defamation action. *See Fikes v. Furst*, 2003-NMSC-033, ¶ 12, 134 N.M. 602, 81 P.3d 545 ("The primary basis of an action for libel or defamation is contained in the damage that results from the destruction of or harm to that most personal and prized acquisition, one's reputation." (internal quotation marks and citation omitted)). Because defamation is a wrong against an individual, the remedy for such an offense is a personal redress of that wrong. *See In re Terry*, 394 N.E.2d 94, 95 (Ind. 1979) (per curiam). By contrast, professional misconduct is a wrong against the public, threatening the preservation of a fair and impartial judicial system, and is addressed through application of the rules of professional discipline. *Id.*; *see also* Rule Set 16-Preamble ("The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar.") The inclusion of the word "Defamation" in the heading to Rule 16-802(A) does not and cannot alter the rule's essential purpose, nor can it overcome its unambiguous plain language. *Cf. Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232 ("A statute's title may be used only to resolve existing doubts or ambiguities as to the statutory meanings and not to create ambiguity where none existed." (internal quotation marks and citation omitted)).

{24} Accordingly, we hold that an attorney who lacks an objectively reasonable factual basis when making a statement about the integrity or qualifications of a judge or other judicial officer has made the statement with "reckless disregard as to its truth or falsity" within the meaning of Rule 16-802(A).

**2. After-acquired evidence is not relevant to the determination of whether an attorney made a statement with reckless disregard for its truth or falsity**

{25} Much of Marshall's briefing and argument before this Court has focused on what he contends are the hearing committee's and the hearing panel's errors in refusing to consider evidence which Marshall purports to support his statements about Judge Wechsler and which Marshall acquired after he filed his pleadings in the Court of Appeals. Marshall argues that the hearing committee and hearing panel "have departed from the function of the judiciary, which is to seek the truth." He further argues that, because truth is a defense to a civil defamation action, he should have been able to present this after-acquired evidence. Disciplinary Counsel argues that the relevant inquiry is what Marshall knew when he made the statements at issue and, therefore, any evidence acquired after Marshall filed his pleadings in the Court of Appeals is immaterial. We agree with Disciplinary Counsel.

{26} Marshall was charged with making statements with reckless disregard for their truth or falsity. Under the objective standard that we have adopted for Rule 16-

802(A), when we evaluate whether an attorney has made a statement with reckless disregard for its truth or falsity, we consider only whether the attorney possessed an objectively reasonable factual basis for the statement at the time it was made. *See Cobb*, 838 N.E.2d at 1214. As a matter of logic, any evidence an attorney may have acquired after making a statement could not have formed the basis for making it. *See State ex rel. Counsel for Discipline of the Nebraska Supreme Court v. Gast*, 896 N.W.2d 583, 597 (Neb. 2017) (per curiam) ("Because the relevant inquiry is whether [the attorney] made the 'cover-up' statement . . . with reckless disregard as to its truth or falsity, we will focus on his knowledge at that time."). To conclude otherwise would defeat the purpose of the rule, which, as we have discussed herein, is to ensure that an attorney does not act with conscious indifference to truth or falsity when speaking about the integrity or qualifications of a judicial officer. "A system that permits an attorney without objective basis to challenge the integrity . . . of a judge presiding over a case elevates brazen and irresponsible conduct above competence and diligence, hallmarks of professional conduct." *Cobb*, 838 N.E.2d at 1214.

{27}     We conclude that the hearing committee and hearing panel did not err when they declined to consider evidence acquired by Marshall after he made the statements impugning the integrity of Judge Wechsler.

## 3. Substantial evidence supports the hearing committee's and hearing panel's conclusions that Marshall violated Rule 16-802(A)

{28} Having clarified the appropriate standard, we now evaluate whether substantial evidence supports the hearing committee's factual findings and supports its conclusion that Marshall violated Rule 16-802(A).

{29} As a threshold matter, we note that the statements Marshall made in his filings with the Court of Appeals and in his petition for a writ of certiorari in this Court were statements "about the qualifications or integrity of a judge" within the meaning of Rule 16-802(A). Accusing Judge Wechsler of bias and favoritism (specifically in his procedural and substantive rulings), implying that he could have "fixed the case in favor of his former client," and suggesting that he "concealed his ties to the Navajo Nation in order to award water to his former clients" all impugn Judge Wechsler's ethical and professional integrity as a judge.

{30} At the disciplinary hearing,[6] Marshall argued that the exhibits he attached to his pleadings and his experience in the Legislature dealing with the Navajo Nation

---

[6]Before this Court, Marshall generally asserts that many of the hearing committee's findings regarding the basis for his allegations against Judge Wechsler were in error or lacked substantial evidence. However, he fails to explain the basis of those assertions. Additionally, Marshall waived any contention that the hearing committee's findings of fact were not supported by substantial evidence by failing to provide a summary of proceedings in his brief in chief that "includes the substance of the evidence bearing on the proposition." Rule 12-318(A)(3) NMRA.

20

supported his assertion that DNA was an agency or instrumentality of the Navajo Nation and that, because Judge Wechsler had represented DNA, he should have recused himself from the water rights adjudication. However, as the hearing committee found, the only exhibit attached to the emergency motion and brief filed in the Court of Appeals, an excerpt from a book, Peter Iverson, *Diné: A History of the Navajos*, contained no assertion that DNA was an agency of the Navajo Nation. On the contrary, the text made clear that the Navajo Nation had general counsel who were not DNA attorneys. Although DNA was initially a program of the Office of Navajo Economic Opportunity (ONEO), the book excerpt explained that DNA "attracted opposition and animosity from the outset" and that DNA "split off from the ONEO" soon after 1966. The hearing committee also found that a 1971 law review article Marshall appended as an exhibit to his combined motion and brief for rehearing "disprove[d]" Marshall's "allegations that Judge Wechsler was an attorney for the Navajo Nation" and "that DNA was an agent or instrumentality of the Navajo Nation" because the article stated that DNA opposed the Navajo Nation in tribal court and was "100% federally funded" (internal quotation marks and citation omitted).

{31} Similarly, Marshall's assertion at the hearing that he knew, based on his time in the Legislature, that DNA "was funded by The Navajo Nation, with money they

21

received from the federal government" and that he knew "from the [L]egislature that whoever controls the checkbook controls the enterprise" was lacking in evidentiary support. Even if Marshall's experience in the Legislature could provide the kind of factual support required under the rule, it is unavailing here because the document attached to his brief directly contradicted his allegations. Moreover, before the hearing committee, Marshall admitted that his provocative statement concerning "disquieting rumors about Judge Wechsler" circulating among members of the Legislature in early 2018 was without a factual basis.

{32} Finally, the hearing committee rejected Marshall's claim that Judge Wechsler's litigation on behalf of individual Navajo people "equate[d] to representation of the Navajo Nation." None of the cases Marshall cited lists the Navajo Nation as a party. *See Haceesa v. Heim*, 1972-NMCA-088, 84 N.M. 112, 500 P.2d 197; *Natonabah v. Bd. of Educ. of Gallup-McKinley Cnty. Sch. Dist.*, 355 F. Supp. 716 (D.N.M. 1973); *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164 (1973) (lacking reference in the published opinion to Judge Wechsler's representation of any party to the case notwithstanding the reference in Iverson, *supra* at 252, to language quoting Judge Wechsler on the significance of its ruling); *Mancari v. Morton*, 359 F. Supp. 585 (D.N.M. 1973), *rev'd*, 417 U.S. 535 (1974).

{33} Substantial evidence supports the hearing committee's determination that

Marshall did not have an objectively reasonable factual basis to support his allegations of bias and lack of candor against Judge Wechsler. Accordingly, we conclude that the hearing committee did not err in determining that Marshall violated Rule 16-802(A) by making statements with reckless disregard for their truth or falsity about the integrity of a judge.

**C.     Marshall Violated Rule 16-301 by Filing Frivolous Pleadings**

{34}     Marshall's conduct in violating Rule 16-802(A) also forms the basis of the charge that Marshall violated Rule 16-301. Rule 16-301 states, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." An issue or pleading is frivolous, which is synonymous with "groundless" if "there is no arguable basis in law or fact to support" the argument. *See G.E.W. Mech. Contractors, Inc., v. Johnston Co.*, 1993-NMCA-081, ¶¶ 23, 24, 115 N.M. 727, 858 P.2d 103 (concluding that the term "groundless" under the Unfair Practices Act has the same meaning as "frivolous" as it is used in Rule 16-301 (internal quotation marks omitted)). We have stated that, while Rule 16-301 recognizes as an exception the right of an attorney to pursue an expansion of the law, that exception may not be used for tactical reasons or to pursue meritless claims in the hopes of achieving a

litigation advantage. *See In re Estrada*, 2006-NMSC-047, ¶ 22, 140 N.M. 492, 143 P.3d 731 (per curiam).

{35} We have already concluded that Marshall did not have an objectively reasonable factual basis for the allegations that Judge Wechsler was employed by the Navajo Nation, worked for an instrumentality of the Navajo Nation, or was in any way biased in favor of the Navajo Nation. Marshall counters that the committee commentary to Rule 16-301 and the Preamble to the Rules of Professional Conduct "expressly authorize lawyers to take action based on incomplete information." The committee commentary explains,

> The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.

Rule 16-301 comm. cmt. 2. We reject Marshall's overly expansive interpretation of the committee commentary.

{36} As we have explained, the facts and circumstances as they existed at the time Marshall filed his pleadings did not support his allegations or his claim for relief. *See* Rule Set 16-Preamble ("[A]ssessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in

24

question."). Nor can it fairly be said that the facts fell short because they were not yet "fully substantiated." *See* Rule 16-301 comm. cmt. 2. Marshall's pleadings were grounded solely in innuendo and supposition, and were directly contradicted by the documentary evidence he attached to the briefs in support of his motions. Accordingly, Marshall did not possess a good-faith basis to advance the claim that Judge Wechsler "participated personally and substantially" in the water rights adjudication when he was at DNA. *See* Rule 21-211(A)(5)(b) (requiring a judge to self-disqualify in a proceeding if the judge "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding"). We have previously affirmed hearing committee determinations of Rule 16-301 violations where attorneys have proceeded with claims in the face of clearly contrary evidence. *See Estrada*, 2006-NMSC-047, ¶¶ 23, 27; *In re Montoya*, 2011-NMSC-042, ¶¶ 34, 41, 46, 150 N.M. 731, 266 P.3d 11 (per curiam). We find no error in the hearing committee's conclusion that Marshall violated Rule 16-301 by filing frivolous pleadings in this case.

**D.     Marshall Violated Rule 16-804(D) by Engaging in Conduct Prejudicial to the Administration of Justice**

{37}     Marshall was also charged with violating Rule 16-804(D), which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is

25

prejudicial to the administration of justice." "Our legal profession must vigilantly strive to maintain the confidence of the public and to earn a reputation as a profession that pursues justice without personal attacks and unnecessary expense." *In re Ortiz*, 2013-NMSC-027, ¶ 14, 304 P.3d 404. Our previous decisions make clear that conduct in violation of the Rules of Professional Conduct that wrongfully impedes the timely and just adjudication of claims, especially when an attorney engages in it repeatedly, will amount to "conduct prejudicial to the administration of justice." *See In re Neal*, 2003-NMSC-032, ¶¶ 20-22, 134 N.M. 594, 81 P.3d 47 (per curiam) (holding that an attorney violated Rule 16-804(D), observing that "if all lawyers behaved like [the attorney], the principles of judicial economies and administration of justice could be compromised," and concluding that the attorney's "conduct inconvenienced other counsel, litigants . . . , and the court itself"). "Protection of the public includes safeguarding the resources of the legal system for the use of the public." *In re Allred*, 2001-NMSC-019, ¶ 21, 130 N.M. 490, 495, 27 P.3d 977 (per curiam).

{38}    In *Ortiz*, 2013-NMSC-027, ¶¶ 6-7, 14, we concluded that an attorney's conduct violated Rule 16-802(A) and Rule 16-804(D), among other rules, when she made disparaging remarks about the integrity of several judicial officers and other attorneys. We noted that the attorney's misconduct "adversely impacted the progress

26

of the litigation in which she was involved[, and b]y her intolerable behavior, [the attorney] caused unnecessary additional expense and sought to intimidate and improperly influence those who stood in her way." *Ortiz*, 2013-NMSC-027, ¶ 14. This Court also held that an attorney's "tactics in pursuing a baseless claim and then ignoring efforts to dispose of the claim amounted to conduct prejudicial to the administration of justice in violation of Rule 16-804(D)." *In re Bloomfield*, 1996-NMSC-017, ¶ 7, 121 N.M. 605, 916 P.2d 224 (per curiam). Marshall's conduct in this case was similarly vexatious and disparaging of the judicial system.

{39} The underlying case at issue in this proceeding is a complex water rights adjudication that began in 1975, with twenty-eight named parties on appeal. *See State ex rel. State Engineer v. United States*, 2018-NMCA-053, ¶ 4 (describing the settlement agreement reached in the adjudication after more than a decade of litigation, Congress's approval and implementation of the settlement agreement, the New Mexico Legislature's appropriation to pay the State's cost of the settlement agreement, and the Legislature's authorization of the State Engineer to bring a lawsuit seeking judicial approval regarding the State's share of the water). Late in the year of filing of the Court of Appeals opinion, the hearing committee found that Marshall filed numerous baseless pleadings, failed to contact opposing counsel before filing these pleadings, and disregarded the rules governing recusals.

27

Substantial evidence therefore supports the conclusion that Marshall wrongfully injected needless delays and complications in a case that was already complex and time consuming. Additionally, Marshall persisted in advancing his claims well after he was placed on notice that they were so lacking in factual basis and legal merit that they likely amounted to violations of the Rules of Professional Conduct. *Cf. Bloomfield*, 1996-NMSC-017, ¶ 7 (concluding that an attorney failed to make reasonable efforts to expedite litigation by "pursuing a baseless claim and then ignoring efforts to dispose of the claim . . . in violation of Rule 16-804(D)").

{40}     By his conduct, Marshall failed to uphold his duty to "vigilantly strive to maintain the confidence of the public" in our profession. *Ortiz*, 2013-NMSC-027, ¶ 14. Marshall's statements undermined public confidence in the judiciary by, for example, implying that a judge "fixed this case" in favor of his former clients, exhibited "bias and favoritism," and failed to act with integrity in overseeing the adjudication. The public would not and should not have any confidence in a system that would permit a judge to do what Marshall alleged Judge Wechsler had done. *Cf. In re McBee*, 2006-NMSC-024, ¶ 13, 139 N.M. 482, 134 P.3d 769 (per curiam) (concluding that a judge breached several "fundamental ethical duties," including the duty to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," by failing to recuse from a case in which

28

he had a personal relationship with the defendant's counsel (internal quotation marks and citation omitted)).

{41}    For these reasons, we conclude that substantial evidence supports the hearing committee's conclusion that Marshall violated Rule 16-804(D) "by engaging in conduct prejudicial to the administration of justice."

**E.    Discipline**

{42}    We decide the appropriate discipline "independently as the final arbiter of attorney discipline without [deference] to the legal conclusions and recommendations of either a hearing committee or hearing panel." *Bristol*, 2006-NMSC-041, ¶ 27. We look to the ABA Standards for Imposing Lawyer Sanctions (Am. Bar Ass'n 1992) (ABA Standards)[7] for guidance in determining appropriate lawyer disciplinary sanctions. *Key*, 2005-NMSC-014, ¶ 5. The ABA Standards direct us to consider (1) the ethical duty violated by the lawyer, (2) the lawyer's mental state, (3) the extent of actual or potential injury caused by the lawyer's misconduct, and (4) aggravating or mitigating circumstances. ABA Standards, Part II.

---

[7]Available at http://cdn.ca9.uscourts.gov/datastore/library/2013/02/26/ Girardi_sanctions.pdf (last visited Mar. 3, 2023).

29

{43} Disciplinary Counsel initially recommended a public censure, while the hearing committee recommended an indefinite suspension. The hearing panel also recommended indefinite suspension because it was concerned that Marshall could engage in similar conduct in the future since he continued to deny that he did anything improper. At oral argument, Disciplinary Counsel changed her recommendation to indefinite suspension, in light of Marshall's continued reluctance to admit wrongdoing.

{44} Marshall violated his duty to the public by violating Rule 16-802(A) and violated his duty to the legal system by violating Rules 16-301 and 16-804(D). ABA Standards, Part II; *see also* ABA Standards, Part III.C.5.0 & 6.0 (prescribing sanctions for violating "duties owed to the public" and "duties owed to the legal system"). He violated these rules knowing the potential consequences his statements would have on the public's perception of the judicial system. Additionally, Marshall's statements had the potential to undermine public confidence in the judiciary by leveling unfounded accusations against Judge Wechsler concerning his impartiality and integrity as a judge.

{45} There are several aggravating and mitigating factors present. *See* ABA Standards, Part III.C.9.2-9.3. (defining aggravation and mitigation and specifying factors on behalf of each). Mitigating factors include Marshall's lack of a prior

disciplinary record and his cooperation in these disciplinary proceedings. *See* ABA Standards, Part III.C.9.32. Aggravating factors include Marshall's substantial experience in the practice of law, the fact that he violated multiple rules of professional conduct on several instances even after he had notice that his actions potentially violated several rules of professional conduct, and his failure to acknowledge the wrongful nature of his conduct. *See* ABA Standards, Part III.C.9.22. At oral argument, Marshall was given the opportunity to take responsibility for his actions and acknowledge his wrongful conduct. He did not take advantage of that opportunity. Instead, he said he regretted being "put in this position" by the judge and stated that, although he could have raised the question of recusal differently, the substance of the pleadings would have been the same.

{46}     Marshall's response at oral argument led us to conclude, as the hearing panel did, that Marshall could engage in similar conduct in the future. His failure to take responsibility for his actions necessitated serious repercussions. For that reason, we agreed with the hearing panel's recommendation of indefinite suspension.

{47}     To be clear, we did not impose this discipline because Marshall filed a motion for recusal, which he was well within his rights to do. *See* Rule 1-088.1(G) NMRA. What Marshall did *not* have the right to do was make serious, disparaging allegations impugning Judge Wechsler's integrity as a judicial officer without a factual basis. It

31

was the groundless, provocative, and legally meritless quality of his allegations, not his filing of a motion to recuse, that we sanctioned.

## III.   CONCLUSION

{48}   Substantial evidence supports the hearing panel's conclusion that Marshall violated Rules 16-301, 16-802(A), and 16-804(D) of the Rules of Professional Conduct. Based on these violations, Marshall is suspended for an indefinite period of no less than eighteen months from the date of our January 13, 2022, order.[8] He may petition for reinstatement after at least eighteen months under the procedure outlined in Rule 17-214 NMRA. As conditions of his reinstatement, Marshall must complete a minimum of four hours of Minimum Continuing Legal Education ethics credits, take the Multistate Professional Responsibility Examination and receive a score of at least eighty, and pay the costs of the disciplinary proceeding.

---

[8]We initially suspended Marshall for an indefinite period of no less than one year in accordance with the Disciplinary Board's recommendation. However, following our order suspending Marshall, Disciplinary Counsel filed a motion for order to show cause as to why Marshall should not be held in contempt for failing to abide by Rule 17-212 NMRA, which requires suspended attorneys to notify clients, opposing counsel, and courts of their suspension. We held oral argument and found Marshall in contempt of court. We therefore extended his period of indefinite suspension to at least eighteen months. *See* Order, S-1-SC-37698 (N.M. May 26, 2022).

{49}    **IT IS SO ORDERED.**


                                   _____
                                   **C. SHANNON BACON, Chief Justice**


                                   _____
                                   **MICHAEL E. VIGIL, Justice**


                                   _____
                                   **DAVID K. THOMSON, Justice**


                                   _____
                                   **JULIE J. VARGAS, Justice**


                                   _____
                                   **BRIANA H. ZAMORA, Justice**