**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

VICTOR R. MARSHALL,

    Plaintiff - Appellant,

v.

C. SHANNON BACON, Chief Justice of
the Supreme Court of New Mexico; MIKE
HAMMAN, State Engineer of the State of
New Mexico; ROLF SCHMIDT-
PETERSEN, Director of the New Mexico
Interstate Stream Commission; HOWARD
THOMAS, Chair of the Disciplinary Board
of New Mexico; ANNE L. TAYOR, Chief
Disciplinary Counsel for the Disciplinary
Board; JANE GAGNE, Assistant
Disciplinary Counsel for the Disciplinary
Board, all in their official capacities only,

    Defendants - Appellees.

No. 24-2076
(D.C. No. 1:23-CV-00494-MIS)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **McHUGH**,
Circuit Judge.

_____

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Victor R. Marshall, an attorney representing himself, appeals the district court's judgment dismissing his action. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

### A. Marshall's suspension

In a January 2022 order, the New Mexico Supreme Court ("NMSC") suspended Marshall from the practice of law for an indefinite period of no less than one year. The suspension stemmed from statements Marshall had made in filings before the New Mexico Court of Appeals about retired New Mexico state judge James J. Wechsler, who had been appointed in 2008 to preside over a long-running water rights case involving clients Marshall represented. Marshall petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court denied his petition. *See Marshall v. Sup. Ct. of N.M.*, 142 S. Ct. 2752 (2022).

On March 13, 2023, the NMSC issued *In re Marshall*, 528 P.3d 653 (N.M. 2023) ("*Marshall I*"), to "set out [its] reasoning in issuing [the January 2022] order," *id.* at 661.[1] The NMSC explained that substantial evidence supported the decision of a hearing committee of the NMSC's Disciplinary Board ("Board") that Marshall violated several New Mexico Rules of Professional Conduct by (1) making statements about Judge Wechsler's integrity with reckless disregard for their truth or falsity, in violation of Rule 16-802(A); (2) filing frivolous pleadings alleging Judge

---

[1] The January 2022 order had stated that "a formal opinion will follow." App. vol. 2 at 134.

Wechsler had personally and substantially participated in the water rights case decades earlier on behalf of the party in whose favor he later ruled, in violation of Rule 16-301; and (3) engaging in conduct prejudicial to the administration of justice by filing numerous baseless pleadings in the water rights case, in violation of Rule 16-804(D).

A few days later, on March 16, 2023, the NMSC issued a second opinion, *In re Marshall*, 528 P.3d 670 (N.M. 2023) ("*Marshall II*"), to explain a May 2022 contempt ruling it issued from the bench. The NMSC recounted that in April 2022, it had issued Marshall an order to show cause why he should not be held in contempt of court for failing to comply with Rule 17-212 of the New Mexico Rules Governing Discipline, which sets out requirements with which suspended attorneys must comply. Marshall responded, and the NMSC held a hearing on the matter in late May 2022. At the conclusion of the hearing, the NMSC held Marshall in indirect contempt of court based on the rule violations and direct contempt based on his conduct at the hearing. The NMSC required Marshall to comply with the rule within one week, added six months to his indefinite suspension, fined him $2,000 for the direct contempt, and warned him that he faced additional penalties, including permanent disbarment, if he did not timely pay the fine. Regarding the amount of the fine, the NMSC revisited its "precedent setting a $1,000 limit to fines imposed for contempt" and concluded that in light of New Mexico "precedent, statutes, and relevant constitutional provisions," the limit no longer applies. *Id.* at 672.

3

Marshall failed to comply with the May 2022 ruling, so on July 13, 2023, the

NMSC held a second show-cause hearing.  The next day, the NMSC issued an order

permanently disbarring Marshall due to his failure to purge himself of his contempt.

*See* App. vol. 2 at 122–31.

### B.    Marshall's federal action

Meanwhile, on June 7, 2023, Marshall filed the action underlying this appeal.

On June 27, 2023, he filed an amended complaint, which is the operative pleading in

this case.  Marshall named six defendants in their official capacities only:

C. Shannon Bacon, who was then the Chief Justice of the NMSC;[2] Mike Hamman,

State Engineer of the State of New Mexico; Rolf Schmidt-Petersen, Director of the

New Mexico Interstate Stream Commission; Howard Thomas, Chair of the Board;

Anne L. Taylor, Chief Disciplinary Counsel for the Board; and Jane Gagne, Assistant

Disciplinary Counsel for the Board.

Marshall alleged that in *Marshall I* and *Marshall II*, the NMSC created "new

censorship rules" that were "designed to conceal serious judicial misconduct

committed by several judges," including Justice Bacon and Judge Wechsler.  App.

vol. 1 at 18, ¶ 1.  The reference to "new censorship rules" primarily pertained to

*Marshall I*'s interpretation of the "reckless disregard" standard in New Mexico Rule

of Professional Conduct 16-802(A), which provides:

> Defamation.  A lawyer shall not make a statement that the lawyer knows to
> be false or with reckless disregard as to its truth or falsity concerning the

---

[2] In her appellate brief, Justice Bacon states that she completed her term as
Chief Justice in 2024.  We therefore refer to her as "Justice Bacon."

4

qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

In addressing whether the hearing committee erred in finding Marshall had acted with reckless disregard for the truth or falsity of his statements about Judge Wechsler's integrity, the NMSC found it necessary to "elucidate the proper standard to apply when determining whether a statement has been made with reckless disregard for purposes of applying Rule 16-802(A)." *Marshall I*, 528 P.3d at 661. The NMSC rejected Marshall's invitation to adopt an actual-malice standard based on First Amendment jurisprudence governing civil defamation actions involving criticisms of public officials and instead held that "the proper inquiry is whether the attorney's factual basis for making the statement at issue was objectively reasonable." *Id.* at 662. The court also held that evidence of the truth or falsity of the attorney's statement that the attorney acquires after the statement has been made is irrelevant to the reckless-disregard analysis. *Id.* at 665. Marshall alleged that these holdings posed constitutional problems not only for Rule 16-802(A), but also for the other two rules of professional conduct the NMSC determined he had violated.

In addition to challenging the legality of these "new censorship rules," Marshall alleged that the May 2022 contempt ruling itself and the hearing process the NMSC had employed violated various constitutional rights. He further alleged that Justice Bacon had suspended him from the practice of law in retaliation for pointing out that she and other judges had engaged in judicial misconduct concerning the

water rights case. Marshall also alleged that defendants Hamman and Schmidt-Petersen (together, "State Defendants") improperly communicated with Judge Wechsler *ex parte* regarding the water rights case and, during the time Judge Wechsler was presiding over the water rights case, improperly paid his son and his son's law firm for the provision of legal services to the state entities that employed the State Defendants.

Marshall advanced fourteen claims, asserting violations of various constitutional rights, several federal and state statutes and rules, and the right to a jury trial under federal and state law. He sought declaratory and injunctive relief, including a declaration "that the new rules and the sanctions issued [in *Marshall I* and *Marshall II*] violate the First Amendment and the due process clause of the Fifth Amendment, [and] other laws described in [the amended] complaint, and controlling precedents," App. vol. 1 at 51–52, ¶ 123(A); preliminary and permanent injunctions against enforcement of those rules and sanctions; vacatur of the sanctions against him; an injunction prohibiting the State Defendants from improperly communicating with judges *ex parte*; and an order directing the State Defendants to provide proposals to eliminate the conflict of interest stemming from payments to "Judge Wechsler's immediate family," *id.* at 52, ¶ 123(H).

## C.   The district court grants defendants' motions to dismiss

All defendants filed motions to dismiss the amended complaint. The district court granted the motions. Construing the claims against the State Defendants as alleging only a conspiracy to interfere with Marshall's civil rights under 42 U.S.C.

6

§§ 1985(3) and 1986, the district court rejected the State Defendants' argument that they were entitled to Eleventh Amendment sovereign immunity, instead concluding that the exception to sovereign immunity created in *Ex parte Young*, 209 U.S. 123 (1908), applied to the claims against them. But the court concluded that Marshall failed to state a claim on which relief could be granted under § 1985(3) because he failed to plausibly allege any of the elements of such a claim. And absent an underlying § 1985(3) conspiracy claim, the court ruled, his § 1986 claim necessarily failed. *See* App. vol. 3 at 196 (citing *Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir. 1985) (explaining that "§ 1986 is dependent upon the validity of a § 1985 claim")). The court therefore dismissed the claims against the State Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

Next, the district court determined that Defendants Thomas, Taylor, and Gagne (together, "Board Defendants") were entitled to Eleventh Amendment immunity, for two reasons. First, the court concluded that the equitable relief Marshall sought against the Board Defendants was impermissible under the *Ex parte Young* exception. The court relied on *Whole Women's Health v. Jackson*, 595 U.S. 30 (2021), where the Supreme Court explained that "[a]s *Ex parte Young* put it, 'an injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government,'" and "[i]f a state court errs in its rulings . . . the traditional remedy has been some form of appeal," *id.* at 39 (quoting *Ex parte Young*, 209 U.S. at 163). The district court observed that the NMSC had reviewed the Board's rulings and recommendations and the Supreme Court had denied review of the NMSC's January

2022 ruling. The court therefore concluded that *Ex parte Young* did not permit Marshall's attempt to collaterally attack the Board's proceedings.

Second, the district court concluded that Marshall could not obtain from the Board Defendants the prospective equitable relief he sought because under New Mexico Rule Governing Discipline 17-206(A), "attorney suspension is a matter for the [NMSC]," and after the NMSC adopted the Board's findings, the "Board was no longer the appropriate party from whom Marshall could seek relief." App. vol. 3 at 198. Thus, the court concluded, "the only step [it] could take regarding [the] Board Defendants would be to retroactively critique proceedings already conducted, rather than to address ongoing violations of federal law," *id.*, as required for application of the *Ex parte Young* exception.

Finally, the district court concluded that the *Rooker-Feldman* doctrine[3] barred jurisdiction over the claims against Justice Bacon. The court reasoned that Marshall's claims against Justice Bacon were a losing party's challenge to a final state court proceeding because "the alleged 'new rules' are found not in the form of regulations or orders issued by the Supreme Court of New Mexico, but exclusively in the form of suspension proceedings against Marshall." *Id.* at 200. Marshall argued that the suspension proceedings were not final because when he filed his original complaint on June 7, 2023, he was subject to ongoing proceedings related to his suspension, namely, the July 13, 2023, show-cause hearing and the resulting order

---

[3] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

8

permanently disbarring him, and he could potentially face additional sanctions.  The

district court rejected that argument, concluding that by the time he filed his initial

complaint, "all issues of law and fact related to his suspension were determined, the

[NMSC] had finally disposed of the case, Marshall had petitioned the United States

Supreme Court for a writ of certiorari, and that Court had denied review." *Id.* at 201

(internal quotation marks omitted).  The court further held that "[a]ny subsequent

proceedings do not bear on the finality of the suspension rulings specifically

challenged by Marshall." *Id.*

For all these reasons, the district court dismissed the amended complaint

without prejudice, closed the case, and issued a judgment in defendants' favor.

**D.      The district court denies Marshall's post-judgment motions**

Marshall filed four post-judgment motions—two to disqualify or recuse the

district judge, one for reassignment of the case to an out-of-district judge, and one for

reconsideration.  The district court denied the motions.

## II.  Discussion

**A.      Dismissal of claims against the Board Defendants**

We first address the district court's dismissal of the claims against the Board

Defendants on the ground of Eleventh Amendment immunity.  "The Eleventh

Amendment constitutionalizes the doctrine of state sovereign immunity." *Free

Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735 (10th Cir. 2024) (internal

quotation marks omitted).  It states:  "The Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted

9

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. That immunity extends to suits like this one—a suit by a state citizen brought against the state's officials in their official capacity. *See Free Speech Coal.*, 119 F.4th at 736. In *Ex parte Young*, however, the Supreme Court "created an exception under which individuals can sue state officers in their official capacities if the lawsuit seeks prospective relief for an ongoing violation of federal law." *Id.*

Marshall raises two arguments concerning the district court's Eleventh Amendment analysis. On de novo review, *see id.* at 735, we conclude that neither has merit.

**1. The NMSC has not abolished Eleventh Amendment immunity**

Marshall argues that sovereign immunity is no obstacle to his claims because in *Gill v. Public Employees Retirement Board*, 90 P.3d 491 (N.M. 2004), the NMSC expressly abolished the State of New Mexico's sovereign immunity. We see nothing in *Gill* purporting to abolish New Mexico's Eleventh Amendment immunity. *Gill* simply recognized that "[t]he *Ex parte Young* doctrine endures as an exception to state sovereign immunity," *id.* at 498 (boldface and capitalization omitted), and held that the doctrine applies "to suits brought in New Mexico state courts to enforce rights validly created under federal law," *id.* at 500. Moreover, the *Gill* court could not have waived the state's Eleventh Amendment immunity because New Mexico's "constitutional sovereign immunity, a derivative of the U.S. Constitution, can only be

waived by [New Mexico's] state legislature and not the courts," *State ex rel. Hanosh v. State ex rel. King*, 217 P.3d 100, 103 (N.M. 2009) (emphasis omitted).[4]

### 2. *Ex parte Young* does not apply

As discussed above, the district court concluded that the *Ex parte Young* exception to Eleventh Amendment immunity does not apply to the claims against the Board Defendants because (1) *Ex parte Young* does not extend to claims against a state's judicial machinery and (2) Marshall could not obtain from the Board Defendants the prospective equitable relief he sought. From the lengthy recitation of general principles applicable to an *Ex parte Young* analysis in Marshall's opening brief we extract only two contentions ostensibly addressing those reasons. However, neither contention actually confronts those reasons, and neither is otherwise persuasive.

First, Marshall proposes that under *Revo v. Disciplinary Board of the Supreme Court for the State of New Mexico*, 106 F.3d 929 (10th Cir. 1997), "[s]tate officials who exercise authority over attorneys have no sovereign immunity against the

---

[4] In one of his reply briefs, Marshall argues that the New Mexico legislature waived the state's sovereign immunity in N.M. Stat. Ann. § 41-4A-9. This argument comes too late. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) ("[W]e generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived."). In addition, we fail to see where he presented this argument to the district court. He therefore forfeited the argument before the district court, and we deem the argument waived because he has not argued for plain-error review on appeal. *See id.* at 1196. But even if we were to consider this argument, we would reject it because the statutory waiver applies only to "claims brought pursuant to the New Mexico Civil Rights Act," § 41-4A-9, and Marshall brought no such claims in this case.

11

enforcement of the Federal Constitution." Aplt. Opening Br. at 34. *Revo*, however, offers no support for such a sweeping proposition. In *Revo*, an attorney brought an action against individual members of the Board and advanced a First Amendment challenge to a New Mexico Rule of Professional Conduct that largely banned attorney personal-injury direct-mail advertisements. *See* 106 F.3d at 930–31. The district court entered a permanent injunction, and this court affirmed. But nowhere in *Revo* is there any discussion of sovereign immunity, *Ex parte Young*, or any challenge to the district court's subject matter jurisdiction. "When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011). Marshall's reliance on *Revo*, therefore, is misplaced.

Furthermore, the plaintiff in *Revo* sought a declaratory judgment that the advertising ban was unconstitutional as applied to him and a solicitation letter he planned to send, and the district court issued a permanent injunction against future enforcement of the ban. *See* 106 F.3d at 931–32. Thus, it appears that in *Revo*, *Ex parte Young*'s requirement that a plaintiff seek only prospective relief for an ongoing violation of federal law was satisfied. As we proceed to explain, the only relief Marshall could have obtained against the Board Defendants in this case is retrospective.

The second contention concerning the district court's *Ex parte Young* analysis we discern in Marshall's opening brief derives from a quotation he provides from

12

*Columbian Financial Corp. v. Stork*, 702 F. App'x 717 (10th Cir. 2017)—that a plaintiff's effort "to right a previous wrong does not disqualify the action from the [*Ex parte Young* exception]," *id.* at 721 (internal quotation marks omitted). *Columbian Financial*, however, involved a claim that state banking officials seized a bank's assets without providing a hearing compliant with federal due process, coupled with a request for an injunction requiring the officials to provide such a hearing. *See id.* at 719. Here, Marshall alleged that the reasons two of the Board Defendants (Gagne and Taylor) sought sanctions against him for failing to comply with the disciplinary rule governing suspended attorneys (Rule 17-212) raised "several constitutional problems." App. vol. 1 at 36–37, ¶ 66. As the district court acknowledged, Marshall's claims against the Board Defendants "theoretically entail prospective equitable relief" regarding his suspension. App. vol. 3 at 198. But to fall within the *Ex parte Young* exception, a plaintiff's claim must be directed at a state official who has a connection to enforcement of the challenged act. *Ex parte Young*, 209 U.S. at 157. And the Board has no enforcement power over his suspension. *See* N.M. R. Governing Discipline 17-206(A)(2)–(3) (authorizing the NMSC, not the Board, to impose suspension for violations of professional-conduct rules). Thus, *Columbian Financial* does not cause us to question the district court's determination that the only relief the court could provide was a retroactive critique of the Board Defendants' actions in proceedings already conducted, not relief that addresses an ongoing violation of federal law. Consequently, we conclude the district court

13

properly held that *Ex parte Young* does not apply and the Board Defendants are entitled to Eleventh Amendment immunity.

**B.      Dismissal of claims against the State Defendants**

The only apparent challenge in Marshall's opening brief to the dismissal of the claims against the State Defendants is his contention that "conspiracy is not relevant to the primary causes of action listed in the [amended] complaint." Aplt. Opening Br. at 33. He acknowledges, however, that "conspiracy might be relevant to the causes of action #12 (conspiracy to violate civil rights) and 13 (failure to prevent conspiracy)." *Id.* Those causes of action are the very ones the district court addressed in ruling that Marshall failed to state a § 1985 or § 1986 claim for relief. Marshall has failed to demonstrate any error in the dismissal of the claims against the State Defendants.[5]

**C.      Dismissal of claims against Justice Bacon**

The district court dismissed the claims against Justice Bacon for lack of jurisdiction under the *Rooker-Feldman* doctrine. Our review is de novo. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023).

The "*Rooker-Feldman* [doctrine] prevents federal courts, with the notable exception of the United States Supreme Court, from exercising jurisdiction over

---

[5] Contrary to Marshall's concern, the district court did not require proof of a conspiracy in connection with its analysis of any claims against any other defendants, and the State Defendants have not argued on appeal that any claims other than those asserted against them should be dismissed for failure to adequately plead the elements of a § 1985 conspiracy.

'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 514 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine's "jurisdictional bar applies when (1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment." *Id.* (internal quotation marks omitted). "The essential point is that barred claims are those complaining of injuries caused by state-court judgments. In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (citation and internal quotation marks omitted).

Seeking to avoid *Rooker-Feldman*'s reach, Marshall argues that the doctrine does not apply because he challenged "general rules that affect all the lawyers in New Mexico." Aplt. Opening Br. at 40. We disagree that his challenge does not require a determination that the NMSC's decisions were wrongfully entered. *Feldman* did hold that federal district courts "have subject matter jurisdiction over general challenges to state bar rules" when those rules are "promulgated by state courts in nonjudicial proceedings" because such rules "do not require review of a final state-court judgment in a particular case." 460 U.S. at 486. But *Feldman* also held that federal district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those

15

challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in [the United States Supreme] Court [pursuant to] 28 U.S.C. § 1257." *Id.*

Marshall's challenge to the rules the NMSC determined he had violated falls into the latter camp. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Feldman*, 460 U.S. at 477 (internal quotation marks omitted); *see also id.* at 480–81 (explaining that the "essence of a judicial proceeding" is a legal determination "adjudicate[ing]" a party's claim "in light of existing law," the facts, and the parties' "legal arguments").

In both *Marshall I* and *Marshall II*, the NMSC had before it Marshall's constitutional and other challenges to the interpretation and application of the rules at issue, and the court determined as a legal matter that a suspension and fine were warranted based on the facts of the case. In *Marshall I* the NMSC did not promulgate a new rule within the meaning of *Feldman* when it rejected Marshall's arguments about the "reckless disregard" standard in Rule 16-802(A); it instead interpreted an existing rule and then applied the rule to Marshall's conduct. *Cf. McKenna v. Curtin*, 869 F.3d 44, 48–49 (1st Cir. 2017) (concluding suspension proceeding was judicial in nature even though the state court rejected the attorney's proposed interpretation of the state's constitution). And in *Marshall II* the NMSC did not promulgate a new rule within the meaning of *Feldman* but instead revisited its own precedent regarding the maximum fine it could impose for contempt.

Accordingly, we reject Marshall's argument that his challenge is facial and therefore escapes the reach of *Rooker-Feldman*.

Marshall also argues that *Rooker-Feldman* does not apply because at the time he filed his initial complaint on June 7, 2023, the state proceedings were ongoing—a hearing had been set for July 13, 2023, on the Board's demand for additional sanctions, and the day after the hearing the NMSC increased the sanction from indefinite suspension to permanent disbarment. We are not persuaded.

*Rooker-Feldman* is limited to cases where "the losing party in state court filed suit after the state proceedings ended." *Exxon Mobil*, 544 U.S. at 291. But "*Rooker-Feldman*'s jurisdictional bar is claim specific." *Graff*, 65 F.4th at 515. For purposes of Marshall's claims against Justice Bacon, the state disciplinary proceedings against Marshall ended when the NMSC issued *Marshall I* and *Marshall II*. Those opinions were final for *Rooker-Feldman* purposes because the NMSC is the highest New Mexico state court. *See* 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States[.]"); *Guttman v. Khalsa*, 446 F.3d 1027, 1032 n.2 (10th Cir. 2006) (explaining that a decision is final for purposes of *Rooker-Feldman* "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved" (internal quotation marks omitted)). The July 13, 2023, show-cause hearing and the

17

ensuing NMSC order permanently disbarring Marshall were collateral proceedings and therefore do not affect *Rooker-Feldman*'s application to *Marshall I* or *Marshall II*. *See Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006) (explaining that ongoing proceedings collateral to a decision that has become final do not affect application of *Rooker-Feldman* to that decision). The July show-cause hearing and the related permanent-disbarment order might have precluded application of the *Rooker-Feldman* doctrine to those collateral proceedings if Marshall had asserted any claims based on them. But he did not. Thus, those proceedings do not preclude application of *Rooker-Feldman* to the claims against Justice Bacon.

Finally, Marshall argues that *Rooker-Feldman* simply does not apply to constitutional claims. He cites three cases that supposedly support this argument, but none do.[6] And, as previously mentioned, the rule is clearly to the contrary. *See Feldman*, 460 U.S. at 486 (holding that federal district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings *even if those challenges allege that the state court's action was unconstitutional*" (emphasis added)).

---

[6] In each case, the court explained that *Rooker-Feldman* did not bar constitutional claims because those claims did not seek relief from a state court judgment. *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1194 (10th Cir. 2010); *Behr v. Campbell*, 8 F.4th 1206, 1213–14 (11th Cir. 2021); *Dorce v. City of New York*, 2 F.4th 82, 106–08 (2d Cir. 2021).

**D.**     ***NRA v. Vullo* does not require reversal of any rulings**

Marshall argues that *NRA v. Vullo*, 602 U.S. 175 (2024), supports reversing the dismissal of his action because the district court in this case committed the same *Twombly*/*Iqbal*[7] errors identified in *Vullo*—erroneous dismissal for failure to plausibly allege a First Amendment violation by taking factual allegations in isolation, *see id.* at 194–95.  This argument borders on the frivolous because the district court did not dismiss *any* claims for failure to plausibly allege a First Amendment cause of action.  It relied on failure to plausibly allege § 1985 and § 1986 claims under the *Twombly*/*Iqbal* standard (State Defendants), Eleventh Amendment immunity (Board Defendants), and the *Rooker-Feldman* doctrine (Justice Bacon).  Moreover, Marshall does not identify any reasonable inferences the district court should have drawn in construing the amended complaint; he merely states that the district court "construed the complaint['s] allegations in isolation from each other, or disregarded them completely, and it failed to draw reasonable inferences in favor of the First Amendment complaint."  Aplt. Opening Br. at 43.  We therefore reject this argument.

---

[7] The *Twombly*/*Iqbal* standard directs courts considering a motion to dismiss to determine whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" which occurs "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**E.      Requests for reassignment to out-of-district judge and for disqualification**

Marshall argues that the district judge, the Honorable Margaret Strickland,

who was assigned to this case after a number of other district court judges recused,

should have reassigned the case to an out-of-district judge because that "is the only

way to moot . . . disclosure and recusal questions" regarding her. *Id.* at 47. We

assume Marshall is referring to Judge Strickland's orders denying his motion for

reassignment under 28 U.S.C. § 292(b), *see* App. vol. 3 at 179–82, and his

post-judgment motion seeking the same relief, *see id.* vol. 4 at 295–96. As Judge

Strickland noted in the first of those two orders, she lacked authority to reassign the

case to an out-of-district judge. That conclusion was correct. Section § 292(b)

authorizes the chief judge of a circuit court, not a district court judge, to "designate

and assign temporarily any district judge of the circuit to hold a district court in any

district within the circuit."[8] Marshall has not addressed this fundamental error in his

requests, so he has waived appellate review of the orders denying his requests. *See*

*Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the

opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

Marshall also contends that the disclosure and recusal problems "provide

separate and sufficient grounds for reversal," Aplt. Opening Br. at 47, apparently

---

[8] Judge Strickland mistakenly relied on § 292(d)'s authorization of the Chief Justice of the United States to designate and assign a district judge of one circuit to serve in another circuit, but the result is the same under the subsection Marshall invoked, § 292(b)—the district court lacked authority to reassign the case to an out-of-district judge.

under the standards for disqualification of a judge under 28 U.S.C. §§ 144 and 455.
This contention is ostensibly directed at Judge Strickland's denial of Marshall's
post-judgment motions seeking her disqualification pursuant to those statutes. Judge
Strickland denied the § 455 motion because it was untimely and the § 144 motion
because it was both untimely and procedurally inadequate (for lack of a statutorily
required affidavit). *See* App. vol. 4 at 292–95. Marshall's cursory reference to the
two statutes wholly fails to address the grounds Judge Strickland gave for denying
those motions, so he has waived appellate review of those rulings. *See Sawyers*,
962 F.3d at 1286.[9]

### III.  Conclusion

We affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[9] Part V of the argument section of Marshall's opening brief is a diatribe
against the substance of *Marshall I*. It merits no separate discussion.